The **METROPOLITAN SANITARY DISTRICT OF GREATER CHICAGO,** a municipal corporation, Plaintiff,

v.

**GENERAL ELECTRIC COMPANY,** a corporation, et al., Defendants.

Civ. A. No. 61 C 2192.

United States District Court,
N. D. Illinois, E. D.
April 10, 1964.

**4.** Harvey Aluminum, Inc. v. American Cyanamid Co., 203 F.2d 105, 107 (2d Cir.), cert. denied, 345 U.S. 964, 73 S.Ct. 949, 97 L.Ed. 1383 (1953).

**132**

---

Thomas C. McConnell, Chicago, Ill., for plaintiff.

John T. Chadwell, Hammond E. Chaffetz, Holmes Baldridge, Edward R. Johnston, W. Donald McSweeney, John Paul Stevens, Earl E. Pollock, Roland D. Whitman, Timothy G. Lowry, Jacob H. Martin, Edward R. Adams, Brainerd Chapman, Chicago, Ill., for defendants.

ROBSON, District Judge.

This is an action by the Metropolitan Sanitary District of Greater Chicago to recover treble damages under the antitrust laws for alleged overcharges on the purchase of electrical equipment from defendants—the corporate manufacturers of the equipment and present or past officers of the corporations.[1] The twenty-six individual defendants filed motions to quash service of process pursuant to Section 17 of the Illinois Civil Practice Act.[2] No individual defendant is a resident of Illinois, and each was served extraterritorially pursuant to Section 17 and Rule 4(d) (7)[3] of the Federal Rules of Civil Procedure. Defendants contend that, first, the extraterritorial service herein made was not permitted by Rule 4(f)[4] at the time service was alleged to have been made. Second, defendants contend that the extraterritorial service permitted by Rule 4 applies solely to diversity or concurrent jurisdiction claims and not to exclusively federal claims such as those arising under the antitrust laws.

Plaintiff relies specifically on Section 17(1) (b) of the Illinois Civil Practice Act which provides:

"(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts herein enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of said acts: * * *

"(b) The commission of a tortious act within this state; * * *."

Plaintiff contends that the alleged actions of defendants in conspiring to fix prices in violation of the antitrust laws constitute a tortious act thereby satisfying the requirements of § 17(1) (b).[5]

When this motion was first raised in July 1962, the court filed a memorandum opinion denying defendants' motions to quash pending completion of plaintiff's pre-trial discovery as to whether venue in this district is proper under the venue provisions of the Clayton Act.[6] At that time the court indicated on the basis of Smith v. Alexandrian, (N.D.Ill.1961) 30 F.R.D. 553, that extraterritorial service

---

1. A more complete statement of facts, including identification of the officers, appears in an earlier ruling on this motion appearing at 208 F.Supp. 943.

2. Ill.Rev.Stat. Ch. 110, § 17.

3. 28 U.S.C.

4. 28 U.S.C.

5. "An action under [this section] to recover damages for violations of [sections 1–7 of this title] is an action in tort, * * *." Northwestern Oil Co. v. Socony-Vacuum Oil Co., 7 Cir. 1943, 138 F.2d 967 cert. den. 321 U.S. 792, 64 S.Ct. 790, 88 L.Ed. 1081; "[A] cause of action in a private antitrust suit for treble damages is a tort action * * *." Simpson v. Union Oil Co. of California, 9 Cir. 1963, 311 F.2d 764, cert. granted, 373 U.S. 901, 83 S.Ct. 1290, 10 L.Ed.2d 197.

6. 15 U.S.C. § 15.

pursuant to the Illinois Civil Practice Act was not permitted in federal courts under Rule 4(d) (7) and 4(f). Subsequently, on January 21, 1963, the Supreme Court of the United States adopted amendments to Rule 4, and the court requested counsel to file suggestions concerning the validity of extraterritorial service in light of those amendments.

The pertinent changes to Rule 4 are as follows (deleted language in brackets; new language italicized):

4(d) (7) "Upon a defendant of any class referred to in paragraphs (1) or (3) of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the [service is made] *district court is held* for the service of summons or other like process upon such defendant in an action brought in the courts of general jurisdiction of that state."

4(f) "All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when [a statute of the United States so provides] *authorized by a statute of the United States or by these rules*, beyond the territorial limits of that state. * * *."

Defendants admit that under amended Rule 4 extraterritorial service is authorized (but in diversity or concurrent jurisdiction claims only). Defendants contend, however, that in enacting the amendments the Supreme Court over-

ruled prior cases in this district, Smith v. Alexandrian, supra, and Rappaport v. International Association of Machinists (N.D.Ill.1962) 202 F.Supp. 235, by adopting holdings of cases of other districts which held that Rule 4(d) (7) authorized use of state statutes authorizing extraterritorial service.[7] Therefore, defendants assert that the validity of service here must be determined without considering the amendments and, under the holding of Smith v. Alexandrian, such service was not authorized in this district.

Plaintiff's position is that the amendments have not changed the law regarding use of out-of-state service of process pursuant to state law but rather, the amendments clarify the law and the present language of Rule 4 therefore may be applied in determining validity of the service herein made. Plaintiff contends amended Rule 4 essentially authorizes no more regarding extraterritorial service than the majority of courts allowed under pre-amendment Rule 4.

In Giffin v. Ensign, 3 Cir. 1956, 234 F. 2d 307 (service pursuant to Pennsylvania non-resident motorist statute) the court upheld extraterritorial service pursuant to state law under Rule 4(d) (7), stating:

"There is no dispute that Rule 4(d) (7), F.R.C.P., if read alone, authorizes the procedure followed in the case at bar to bring the non-resident defendants before the court and to subject them to its jurisdiction. The only question is whether a reasonable man must construe Rule 4(f) as so limiting Rule 4(d) (7) that it cannot

**7.** Giffin v. Ensign, 3 Cir. 1956, 234 F.2d 307, (service under Pennsylvania non-resident motorist statute); Farr & Co. v. Cia Intercontinental De Navegacion De Cuba, 2 Cir. 1957, 243 F.2d 342 (Petition to enforce arbitration agreement pursuant to Arbitration Act, 9 U.S.C.A. § 1 et seq., service by mail in Florida pursuant to New York Statute.); Kappus v. Western Hills Oil, Inc., E.D.Wis., 1959, 24 F.R.D. 123 (Action to recover

payment for stock with extraterritorial service made pursuant to Wisconsin law.); Brandt v. Olson, N.D.Iowa, 1959, 179 F.Supp. 363 (non-resident motorist statute); Koepp v. Peters, E.D.Wis., 1961, 193 F.Supp. 296; Pasternack v. Dalo, W.D.Pa., 1955, 17 F.R.D. 420 (non-resident motorist statute); Holbrook v. Cafiero, D.C.Md., 1955, 18 F.R.D. 218 (non-resident motorist statute).

apply to the situation of these non-resident defendants. * * * We think that it can be said fairly that Rule 4(f) does not address itself to or cover non-resident procedures authorized by State law, which are the subject of Rule 4(d) (7)."

Citing Giffin with approval, the Second Circuit in Farr & Co. v. Cia Intercontinental De Navegacion De Cuba, 2 Cir. 1957, 243 F.2d 342, upheld service of process by mail pursuant to New York law in an action under the Arbitration Act.[8] These are the only two circuits to reach the question. A majority of other district courts confronted with this question upheld extraterritorial service under Rule 4(d) (7), a point recognized by the court in Smith, supra.[9] In fact, at least in one instance such service was upheld in this district, R.I.T.A. Chemical Corp. v. Malmstrom Chemical Corp., N.D.Ill.1962, 200 F.Supp. 954.

There would be some merit to defendants' contention that the amendments overruled prior law if the majority of cases prior to the amendments had followed Smith, or if there had been an equal division of opinion. However, the fact that such an overwhelming number of prior cases, including the two Circuit Courts of Appeals to reach the question, were *contra* to Smith, the Supreme Court cannot be considered as having changed the law by amending the Rule so that it more clearly reflected prior holdings.

In addition to the fact that the amendments to Rule 4 bring it more clearly in line with the majority of prior cases, notes of the Advisory Committee to Rule 4, as well as other comments on the amendments, indicate that clarification, and not change, was intended.

With regard to the amendment to Rule 4(d) (7), the Advisory Committee stated:

" * * * It was argued in McCoy v. Siler, 205 F.2d 498, 501–2 (3rd Cir.) (concurring opinion), cert. denied, 346 U.S. 872, 74 S.Ct. 120, 98 L.Ed. 380 (1953), that the effective service in those cases occurred not when the State official was served but when notice was given to the defendant outside the State, and that subdivision (f) (Territorial limits of effective service), as then worded, did not authorize out-of-State service. This contention found little support. * * * (citing Holbrook, Giffin and others)

"An important and growing class of State statutes base personal jurisdiction over non-residents on the doing of acts or on other contacts within the State, and permit notice to be given the defendant outside the State without any requirement of service on a local State official. * * This service, employed in original Federal actions pursuant to paragraph (7), has also been held proper. (citing Farr and Kappus)

"The salutary results of these cases are intended to be preserved. * * "

With regard to Rule 4(f), the Committee noted:

"The first sentence is amended to assure the effectiveness of service outside the territorial limits of the State in all the cases in which any of the rules authorize service beyond those boundaries." [10]

██ Commentators have also reached the same conclusion.[11] The court can

---

8. 9 U.S.C. § 1 et seq.

9. See cases cited in footnote 7.

10. Advisory Committee Notes to the Rules of Civil Procedure. 3A Barron & Holtzoff, Federal Practice and Procedure (1961 rules ed.) (1964 Supp.) 99.

11. "An amendment to Rule 4(f), curing an obvious omission in the prior rules,

excepts from territorial limits of service there set forth service beyond those limits as permitted 'by these rules' and thus *makes it clear* that Rule 4(f) does not bar extraterritorial service as otherwise permitted by state law." 1 Barron & Holtzoff, Federal Practice and Procedure (1961 rules ed.) (1964 Supp.) 238. But a more powerful argument may be

only conclude that use of state provisions authorizing extraterritorial service[12] under Rule 4(d) (7) is not now, nor was it at the time the instant service was made, prohibited by Rule 4(f).

The next issue raised by defendants is that even though extraterritorial service is authorized by Rule 4, such service is proper only in claims involving diversity or concurrent jurisdiction. Defendants contend state service of process provisions are not available in exclusively federal cases, such as treble damage actions under the antitrust laws, and support their position with the following argument: First, in enacting Section 22 of the antitrust laws, [13] Congress provided for extraterritorial service on corporations alone, thereby precluding use of such service against individuals. Second, Rule 4(e) limits use of state service of process under Rule 4(d) (7) to diversity or concurrent jurisdiction situations.[14] Third, use of state service provisions, which vary from state to state, would encourage forum shopping by antitrust plaintiffs and thus promote confusion and discrimination in application of the antitrust laws.

First, as to service of process provisions in the antitrust laws themselves, it is true that the extraterritorial service authorized by Section 22 applies to corporations alone. Orange Theatre Corp. v. Rayherstz Amusement Corp., 3 Cir. 1944, 139 F.2d 871. However, Section 15 of the antitrust laws, which provides for venue in actions against individuals, is silent as to service. Such service must be governed by the Federal Rules of Civil Procedure. While Section 22 is properly interpreted as not authorizing extraterritorial service on individuals, it does not go so far as to preclude other authorization of such service. It should be noted that Section 22 was adopted in 1914, long before adoption of the Federal Rules of Civil Procedure which must govern service of process on individuals in antitrust claims. Of note here is McManus v. Tato, S.D.N.Y.1959, 184 F.Supp. 958, in which the court held that service of process on a voluntary association in Washington, D. C. could not be justified by Section 12 of the Clayton Act (15 U.S.C. § 22), citing Orange Theatre Corp., supra. Although the court quashed service of process, it refused to dismiss the action indicating that if venue were proper in New York, plaintiff would be able to effect service of process under Rule 4(d).

Rule 4(d) (7) has been applied in at least two other treble damage antitrust claims. In Goldlawr, Inc. v. Shubert, E. D.Pa., 1958, 169 F.Supp. 677, service on a New York resident was made on his Pennsylvania agent pursuant to Pennsylvania law under the authority of Rule 4 (d) (7). Although it is true, as defendants point out, that such service was not extraterritorial, the case does stand for the proposition that state service of process authorized by Rule 4(d) (7) is applicable to exclusively federal claims such

made in the alternative: the new rule is meant to be nothing more than a clarification of the original formulation of the drafters, which has been misconstrued by many federal courts. Note, 27 U. of Chi.L.Rev. 751, 754 (1960). These results—in general, the adoption in original federal actions of methods of securing personal jurisdiction of non-residents furnished by the law of the state in which the district court is held—have now been put on a clearer footing by amendments of Rule 4(e) and (f). Kaplan, Amendments of the Federal Rules of Civil Procedure, 1961–1963, 77 Harv.L.Rev. 601, 621 (1964).

12. Defendants do not contest the constitutionality of Section 17 of the Illinois Civil Practice Act. See Gray v. American Radiator & Standard Sanitary Corp., (1961) 22 Ill.2d 432, 176 N.E.2d 761.

13. 15 U.S.C. § 22.

14. The language in Rule 4(e) relied on by defendants was adopted along with the amendments to Rule 4(d) (7) and Rule 4(f). Defendants' reliance on amended 4(e) would appear to conflict with their earlier position that the amended Rule 4 cannot be used in determining the validity of the service of process effected here.

as antitrust actions even though this could result in different results in federal courts, depending upon what the respective state's law regarding agency provided. More directly in point is Maternity Trousseau, Inc. v. Maternity Mart of Baltimore, D.C.Md., 1961, 196 F.Supp. 456. To effect service on a Delaware resident the Secretary of State of Maryland was served pursuant to state law. Defendants argue that this too was not extraterritorial service since process was served on the Secretary of State within the forum state. This reading of Maternity adopts the fiction that the Delaware resident had named the Secretary of State of Maryland her agent. The Court is of the opinion that the substance of this situation should be recognized for what it is, extraterritorial service. See Giffin v. Ensign, 3 Cir. 1956, 234 F.2d 307 and Farr & Co. v. Cia Intercontinental De Navegacion De Cuba, 2 Cir. 1957, 243 F.2d 342, 349. Surely the validity of service pursuant to Section 17 of the Illinois Civil Practice Act does not turn on its failure to provide for service of process on the Secretary of State of Illinois.

Finally, defendants argue that Rule 4 itself prohibits use of state extraterritorial service of process in exclusively federal claims. This, defendants argue, despite the fact that Rule 1 of the Federal Rules of Civil Procedure provides that the rules govern procedure in all suits of a civil nature. The language of Rule 4(d) (7) gives no indication that its application is limited to diversity or concurrent jurisdiction cases. Defendants rely on the language providing that service is sufficient if it is in the manner provided by the forum state "in an action brought in the courts of general jurisdiction of that state." Defendants' contention would be supported only if the language above cited read "if the same action were brought in the courts of general jurisdiction of that state."

Rule 4(f) likewise gives no indication that state service authorized by the rules is not allowed in exclusively federal cases. Defendants contend such a limitation is provided by Rule 4(e). It provides in part:

"* * * Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state, or (2) for service upon or notice to him to appear and respond or defend in an action by reason of the attachment or garnishment or similar seizure of his property located within the state, service may in either case be made under the circumstances and in the manner prescribed in the statute or rule."

Defendants contend that since a treble damage action could not be brought in a state court in Illinois, this action cannot "under the circumstances" be prescribed by a state statute. The Court is clear in its view that "circumstances" refer not to the nature of the claim, i. e., an antitrust action, but rather the nature of the acts giving rise to the claim, in this instance the alleged price fixing. It should be noted that the preceding sentence in 4(e), which concerns service pursuant to a federal statute, provides that if there is no provision for service in the statute, service shall be in the "manner stated in this rule."

Section 15 of the antitrust laws, while providing for venue in claims against individual defendants, is silent as to the method of service. Such service must be governed by the Federal Rules, including Rule 4. Since neither the Rule itself nor the commentary on the Rule indicates that separate provisions are intended for exclusively federal claims as opposed to diversity or concurrent jurisdiction claims, the extraterritorial service authorized by Rule 4(d) (7) and 4(f) must be held applicable to the instant action. Inasmuch as service pursuant to Section 17 of

the Illinois Practice Act is proper under Rule 4(d) (7), defendants' motions to quash the service on individual defendants are denied. However, plaintiff must still show that venue in this district, as provided for in Section 15, is proper. Therefore, no ruling will be made on defendants' motions to dismiss pending completion of plaintiff's pre-trial discovery as to venue.