**UNITED STATES of America,**
**Plaintiff,**

v.

**The MONTREAL TRUST COMPANY and Tillie V. Lechtzier, Executors of the Estate of Isidor J. Klein, Deceased, Defendants.**

United States District Court
S. D. New York.

May 1, 1964.

Robert M. Morgenthau, U. S. Atty., for the Southern District of New York for the United States; Thomas H. Baer, Asst. U. S. Atty., of counsel.

Shearman & Sterling, New York City, for defendant Montreal Trust Co; Henry Harfield, John E. Hoffman, Jr., New York City, of counsel.

McLEAN, District Judge.

This is an action by the United States against the executors of Isidor J. Klein, a citizen and resident of Canada, who died on June 14, 1955, to recover United States income taxes allegedly owed by Klein for the years 1944, 1945 and 1946, which, together with penalties and interest, aggregate $9,862,053.34. The executors are a Canadian banking institution and an individual resident of Canada.

The complaint was filed in this court on August 2, 1960. The first attempt to serve the summons was made on June 26, 1963, when a copy of the summons was delivered by the marshal to the New York Agency of the Royal Bank of Canada in New York. By separate opinion and order filed herewith, I have granted the motion of Montreal Trust Company to set aside that service.

On September 1, 1963, the Civil Practice Law and Rules (CPLR) of New York took effect. Thereafter on Sep-

tember 9, 1963, the United States Vice Consul in Vancouver, B. C., delivered a copy of the summons and complaint in Vancouver to the manager of Montreal Trust Company's Vancouver branch. On the same day he delivered another copy in Vancouver to the other executor, Tillie V. Lechtzier. Montreal Trust Company moves to set aside the purported service upon it and to dismiss the action. Tillie V. Lechtzier has not joined in the motion.

The government contends that the service is valid under Section 302 and Section 313 of the New York Civil Practice Law and Rules, the so-called "long-arm" statute, which, as far as is pertinent, provides:

"§ 302. Personal jurisdiction by acts of non-domiciliaries

"(a) Acts which are the basis of jurisdiction. A court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, as to a cause of action arising from any of the acts enumerated in this section, in the same manner as if he were a domiciliary of the state, if, in person or through an agent, he:

"1. transacts any business within the state; * * *."

"§ 313. Service without the state giving personal jurisdiction

"A person * * * subject to the jurisdiction of the courts of the state under section 301 or 302, or his executor or administrator, may be served with the summons without the state, in the same manner as service is made within the state * * * by any person authorized to make service by the laws of the * * * country in which service is made * * *."

Montreal Trust Company claims that this court did not acquire personal jurisdiction over it by the purported service, because (1) the New York statute has no

application to this action in a federal court and (2) to apply it here so as to validate service beyond the boundaries of the United States would be unconstitutional.

Defendant's first contention runs afoul of Rule 4(e) of the Federal Rules of Civil Procedure which was amended, effective July 1, 1963, to read, in pertinent part, as follows:

"Whenever a statute or rule of court of the state in which the district court is held provides * * * for service of a summons * * * upon a party not an inhabitant of or found within the state, * * * service may * * * be made under the circumstances and in the manner prescribed in the statute or rule."

At the same time the first sentence of Rule 4(f) was amended to read:

"All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state."

The amendment inserted the phrase "by these rules" thereby making it clear that the rules, as well as a federal statute, may authorize service beyond the territorial limits of the state.

In their amended form, Rules 4 (e) and 4(f), read together, plainly mean that a party not an inhabitant or found within the state may be served with summons in a federal court action under the circumstances and in the manner prescribed by state statute. The Advisory Committee's notes indicate that the amendments were intended to have that effect, so that the federal courts might make use of new state "long-arm" statutes. See Advisory Committee's Notes to Rules 4(d) (7), 4(e) and 4(f).

■ The amended Rules 4(e) and 4(f) do not contravene the Enabling Act (28 U.S.C. § 2072), which forbids the Supreme Court to prescribe rules which "abridge, enlarge or modify any substantive right," for the right affected is not a "substantive right" within the meaning of that statute. Nor are the rules in conflict with Rule 82 which states that the Rules of Civil Procedure "shall not be construed to extend or limit the jurisdiction of the United States district courts" for "jurisdiction" as used in Rule 82 refers only to jurisdiction over the subject matter, not to jurisdiction over the person. Mississippi Publishing Corp. v. Murphree, 326 U.S. 438, 66 S.Ct. 242, 90 L.Ed. 185 (1946) is direct authority for each of these propositions.

It is true that in Arrowsmith v. United Press International, 320 F.2d 219 (2d Cir. 1963), the Court of Appeals has construed another rule which refers to state practice, Rule 4(d) (7), which is concerned with service of process within the state, to relate only to the manner of service authorized by state law. But that is because the rule in express terms is so limited. It states that service may be made upon certain types of defendants "in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state."

On the contrary, Rule 4(e), a rule which governs service upon parties not found within the state, is not so limited. It provides for service "under the circumstances and in the manner prescribed in the statute or rule" of the state. It has been pointed out that the phrase "under the circumstances" was added in order to make it clear that the rule as amended pertains to the amenability of a party to service as well as to the manner of service. 1 Barron and Holtzoff, Federal Practice and Procedure, 1963 Pocket Part § 182.1 p. 238.

■ It is clear, therefore, that, by virtue of a federal rule having the force of federal statute, service of a summons in an action in the federal court in New York may be made, whenever a New York statute so provides, upon a defendant who is not an inhabitant of New York or found within that state. Does the rule mean that although the service may be made outside New York, it must nevertheless be made within the United States? The rule does not say so.

And Rule 4(i) is a clear indication that Rule 4(e) is not so restricted. Rule 4(i) relates to the manner of service to be followed in making service in a foreign country. It begins "[w]hen the federal or state law referred to in subdivision (e) of this rule [i. e., Rule 4(e)] authorizes service upon a party not an inhabitant of or found within the state in which the district court is held, and service is to be effected upon the party in a foreign country," service may be made in the fashion prescribed by the rule. This recognizes that Rule 4(e) contemplates that service pursuant to state law may be made in a foreign country. Service under the Illinois "long-arm" statute, which is similar to New York's (Ill.Rev.Stat. Ch. 110, §§ 16, 17), effected upon a defendant in Germany, has been upheld in an action in the Federal District Court for the Northern District of Illinois. Magnaflux Corporation v. Foerster, 223 F.Supp. 552 (D.C. N.D.Ill.1963).

I have considered whether a distinction can be drawn between federal court actions in which the subject matter jurisdiction of the court is based upon diversity of citizenship and actions, as the present, in which subject matter jurisdiction depends upon the existence of a federal question. Here again, the rule makes no such distinction. And the fundamental principle of the rules, embodied in Rule 1, is that they govern the procedure in the United States district courts "in all suits of a civil nature."

When the amended Rules of Civil Procedure were promulgated by the Supreme Court, Mr. Justice Black and Mr. Justice Douglas objected to the changes in Rule 4, which they said "for the first time permit a Federal District Court to obtain jurisdiction over a defendant by service of process outside the State * * under the circumstances and in the manner prescribed by state law." They said that the "changes will apparently have little effect in so far as 'federal question' litigation is concerned, since 28 U.S.C. § 1391(b) requires such suits to be brought 'only in the judicial district where all defendants reside * * *.'" Statement of Black and Douglas, JJ., 374 U.S. 865 at 869 (1963).

■■ This comment recognizes that the amended Rule 4 applies to federal question litigation as well as to diversity cases. Although, as the justices pointed out, in most instances the change will have little practical significance because of the venue provisions of 28 U.S.C. § 1391(b), the present case is an exception to that generalization. In an action to recover income taxes, venue is not limited to the district where the defendants reside, but may also be laid in the district where "the liability for such tax accrues." 28 U.S.C. § 1396.

Very recently, the federal court in Illinois has held that in a private treble damage antitrust action process may be served upon a defendant outside Illinois pursuant to the Illinois long-arm statute. Metropolitan Sanitary District v. General Electric Company, et al., 35 F.R.D. 131 (N.D.Ill.1964).

■ The court seems to have relied upon Rule 4(d) (7) rather than Rule 4(e), but nevertheless the decision is in point for purposes of the present discussion, for the court rejected defendant's argument that state statutes may be followed only in diversity cases. It also considered to be immaterial a contention strongly urged by defendants here that to permit service in accordance with state statute in a federal question case will result in lack of uniformity in the enforcement of federal statutes. This is true, in the sense that extra-territorial service in, for example, an action to recover federal income taxes, may be made in some cases and not in others, depending upon whether the federal district court in which the action is brought is within a state which has a long-arm statute. Mr. Justice Black and Mr. Justice Douglas seem to have had this in mind when they said in their dissenting statement:

"We also see no reason why the extent of a Federal District Court's personal jurisdiction should depend upon the existence or nonexistence of a state 'long-arm' statute." (374 U.S. at 869)

Nevertheless their views did not prevail, and the amended rules were promulgated. Presumably the majority of the Supreme Court were of the opinion that this lack of uniformity was unimportant. In any event, the argument is one of policy which can properly be made only to the rule making authority. This court must enforce the rule as it is written. I conclude, therefore, that as a matter of construction of the rules, the effect of amended Rules 4(e) and 4(f) is to permit service of summons in this action upon a defendant in a foreign country in a case in which the New York statute authorizes such service.

As so construed, are the amended rules constitutional? Since we are here concerned with the power of the federal government to subject a person to the process of a federal court in a federal question case, the question is whether the attempt contravenes the Fifth Amendment rather than the Fourteenth, which relates to the power of the state. See First Flight Company v. National Carloading Corp., 209 F.Supp. 730 (D.C., E.D.Tenn.1962); Goldberg v. Mutual Readers League, Inc., 195 F.Supp. 778 (D.C., E.D.Pa.1961); Lone Star Package

Car Co. v. Baltimore & Ohio R. Co., 212 F.2d 147 (5th Cir. 1954).

Nevertheless, it is helpful first to look at the question from the point of view of the state.

CPLR § 302, as far as material here, is carefully restricted to the exercise of jurisdiction only over a "non-domiciliary," or his executor, who transacts business within the state and only with respect to a cause of action "arising from" the transaction of that business. As thus restricted, the statute would seem to be within the constitutional power of the state within the rule of International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L. Ed. 95 (1945) and McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). The similar Illinois statute has been held valid under the Fourteenth Amendment. Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673 (1957); National Gas Appliance Corp. v. A B Electrolux, 270 F.2d 472 (7th Cir. 1959); Magnaflux Corp. v. Foerster, supra.

■ No convincing reason has been suggested by defendant as to why federal power should be less extensive than state power, or why due process of law for the federal government should be different from due process of law for the state government.[1] The basis of jurisdiction here is defendant's contacts with the state and the exercise of that jurisdiction is limited to claims arising out of those contacts. The whole trend of the modern cases is in favor of upholding such an assertion of power, despite the complaint of a defendant that he is thereby required to defend himself far from home. I hold that Rules 4(e) and 4(f) do not deprive defendants of due process of law, in violation of the Fifth Amendment.

■ Having determined that the federal rules require this court to follow an applicable state statute, the next question is whether CPLR §§ 302 and 313 apply to this particular case. The first aspect of this question is the matter of alleged "retroactivity." Defendant asserts that the statute does not govern service in a case where, as here, plaintiff's claim arose and the transaction of business by defendant occurred prior to the enactment of the statute. This contention is contrary to the authorities. The right of defendant which is affected is not a substantive right, as was pointed out by the Supreme Court in Mississippi Publishing Corp. v. Murphree, supra. The defendant has "no vested right not to be sued" in the Southern District of New York. McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

■ Therefore, extra-territorial service upon defendant in an action to enforce a pre-existing claim is valid and constitutional. McGee v. International Life Ins. Co., supra; Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673 (1957); Patrick Ellam, Inc. v. Nieves, 41 Misc.2d 186, 245 N.Y.S.2d 545 (Sup. Ct.Westchester Co.1963); William Rand, Inc. v. Joyas de Fantasia, S.A., 41 Misc. 2d 838, 246 N.Y.S.2d 778 (Sup.Ct.N.Y. Co.1964); See Ex parte Collett, 337 U.S. 55, 71, 69 S.Ct. 944, 959, 93 L.Ed. 1207 (1949); Cohen v. Beneficial Loan Corp., 337 U.S. 541, 554, 69 S.Ct. 1221, 93 L. Ed. 1528 (1949).

Defendant next asserts that the New York statute by its terms does not apply here because it is limited to a cause of action "arising from" the transaction of business by a defendant within the state. Defendant argues that a claim for income taxes, allegedly due by reason of the fact that Klein transacted

---

1. See Note, Jurisdiction of Federal District Courts Over Foreign Corporations, 69 Harv.L.Rev. 508 (1956), in which it is suggested that "in the absence of congressional guidance, the federal courts have traditionally held that the constitutional limits on the jurisdiction of state courts are equivalent to the standard for federal jurisdiction."

business in New York and derived taxable income from that business, is not a cause of action "arising from" the transaction of that business. Defendant would limit the application of the statute to a cause of action directly and immediately related to the business done, as, for example, a suit for breach of a contract made by a non-resident defendant in New York. I do not believe that the phrase "arising from" should be construed so narrowly. The situation here is not unlike that in International Shoe Co. v. State of Washington, supra, in which the claim was for unemployment compensation contributions required by state statute to be paid by employers. The Court held that International Shoe Company had sufficient contacts with the State of Washington to subject it to liability for this tax. It said (326 U.S. 310 at 321, 66 S.Ct. 154 at 161):

> "Appellant having rendered itself amenable to suit upon obligations arising out of the activities of its salesmen in Washington, the state may maintain the present suit *in personam* to collect the tax laid upon the exercise of the privilege of employing appellant's salesmen within the state. For Washington has made one of those activities, which taken together establish appellant's 'presence' there for purposes of suit, the taxable event by which the state brings appellant within the reach of its taxing power. The state thus has constitutional power to lay the tax and to subject appellant to a suit to recover it. The activities which establish its 'presence' subject it alike to taxation by the state and to suit to recover the tax."

■■■ I hold that the cause of action asserted here "arises from" the alleged transaction of business by Klein, within the meaning of the New York statute.

Next it is suggested that foreign non-resident executors are in a different category from other persons. But CPLR § 302 expressly applies to the executor or administrator of a non-domiciliary. The problem referred to in my separate opinion concerning the attempted service in New York, i. e., whether or not a foreign executor exists in New York, would not seem to be involved here, since this service was made upon the executors in the very jurisdiction in which they were appointed and in which the administration of Klein's estate has taken place. And in Leighton v. Roper, 300 N.Y. 434, 440, 91 N.E.2d 876, 879 (1950), the constitutionality of a statute subjecting a foreign executor to the jurisdiction of the New York courts was upheld, where, as here, "[t]he statute is narrowly drawn to fit the need, provides all the procedural safeguards required for due process of law, and is applicable only to a cause of action arising in this State." (300 N.Y. at 443, 91 N.E.2d at 881.)

Finally, the contention is made that the New York statute does not apply because Klein did not transact business within New York. This is a question of fact. The issue is whether certain corporations in which Klein was a stockholder transacted business in New York in 1944, 1945 and 1946 and if so, whether those corporations were sham, so that their existence may properly be disregarded.[2]

■■■ It is not practicable to decide this question upon affidavits. A hearing will be necessary at which both parties

---

2. In a criminal action for income tax evasion against Klein's brother and other stockholders of these corporations, this court held that the corporations were not sham. Consequently, several counts of the indictment were dismissed at the close of the government's case. United States v. Klein, 139 F.Supp. 135 (S.D.N.Y.1955), aff'd on another point, 247 F.2d 908 (2d Cir. 1957), cert. denied, 355 U.S. 924, 78 S.Ct. 365, 2 L.Ed.2d 354 (1958). Klein was named a defendant in that indictment but he was never apprehended or tried.

may offer evidence on the subject. It has been pointed out that the issue as to whether Klein was transacting business in New York in 1944, 1945 and 1946 so as to subject his executors to suit here now, is also an issue of fact which will be involved, in the event that service is sustained, in determining at the trial whether Klein or his estate is liable for income taxes for those years. If the parties wish to avoid the possibility that they may be called upon to try this issue twice, they may stipulate, if they so desire, that my determination of this issue at the hearing shall be conclusive upon both sides at any subsequent trial of the entire case. If they do not desire so to stipulate, I must proceed with the hearing in any event, in order to be in a position to make a complete determination of this motion. The only alternative would be to postpone the entire determination until the trial, pursuant to Rule 12(d). Such a course would not be fair to defendant, since it would deprive defendant of any opportunity of avoiding a trial by quashing service in advance.

In conclusion, mention should be made of defendant's suggestion that, even assuming that there may be extra-territorial service of summons, the manner of the service here was not proper under CPLR § 313. Service was made personally in Canada by the United States Vice Consul. Plaintiff has submitted an affidavit to the effect that the Vice Consul is a person "authorized to make service" by the law of British Columbia. This is not controverted by defendant. I hold that the manner of service was sufficient.

Final disposition of this motion will be held in abeyance pending the hearing, which will be held at 10:00 A.M. on May 13, 1964 unless the parties require further time for preparation, in which event a later date will be fixed by the court upon application by either party.