**SPORTMART, INC. and Olympic Distributors, Inc., Plaintiffs,**

v.

**Walter FRISCH, Gary Petrich, RNC, Inc., Nordica USA, Rossignol Ski Company, Inc., Nordica di Franco e Giovanni Vaccari & C.S.A.S. and Skis Rossignol, S. A., Defendants.**

**No. 81 C 4980.**

United States District Court, N. D. Illinois, E. D.

May 7, 1982.

Ralph A. Mantynband, Arvey, Hodes, Costello & Burman, Chicago, Ill., for plaintiffs.

Keith F. Bode, Jenner & Block, Chicago, Ill., James M. Rhodes, Battle, Fowler, Jaffin & Kheel, New York City, Alan Horwich, Schiff, Hardin & Waite, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs, Sportmart, Inc. and Olympic Distributors, Inc., (hereinafter referred to as "Sportmart"), brought this private antitrust action against defendants, Rossignol Ski Company, Inc. and Skis Rossignol, S. A. ("Rossignol defendants"), Nordica USA, Inc. ("Nordica-US") and Nordica di Franco e Giovanni Vaccari & C.S.A.S. ("Nordica-Italy"), RNC, Inc. ("RNC"), a domestic distributor of Nordica and Rossignol ski products, and two employees of RNC, seeking declaratory, injunctive and monetary relief on the ground that defendants allegedly conspired together in a concerted refusal to supply Sportmart with certain Alpine skis and boots in violation of sections 1 and 2 of the Sherman Act.[1] This matter is presently before the Court on the Nordica defendants' motion to dismiss the complaint for lack of personal jurisdiction, improper ven-

---

1. Jurisdiction is asserted pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 15.

ue, and insufficient service of process [2] pursuant to Rule 12(b)(2), (3), (4) and (5) of the Federal Rules of Civil Procedure. For the reasons set forth below, that motion will be granted.

Although the parties submit that the *in personam* jurisdiction of this Court is governed by the law of Illinois, citing *Ohio-Sealy Mattress Manufacturing Co. v. Kaplan*, 429 F.Supp. 139, 140 (N.D.Ill.1977), it is clear that federal due process principles govern the jurisdiction and venue questions in this antitrust action.[3] Rule 4(e) of the Federal Rules of Civil Procedure provides that:

> Whenever a statute of the United States or an order of court thereunder provides for service of a summons . . . upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute or order, or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule.

Thus, if a federal statute or rule provides for service of process, service may be made in the manner prescribed by the statute or rule. Only if there is no applicable federal statute or rule, as in a case brought pursuant to federal diversity jurisdiction, does Rule 4(e) refer to alternative methods of service. In such circumstances, Rule 4(d)(7) immediately preceding Rule 4(e) refers a federal court to the applicable state long-arm statute.[4]

■ The second clause of section 12 of the Clayton Act, 15 U.S.C. § 22, provides for service of process upon a corporate defendant in an antitrust case "in the district of which it is an inhabitant, or wherever it may be found." This worldwide service of process provision prescribes the manner of service in antitrust cases so that, pursuant to Rule 4(e), there is no need to refer to the long-arm statute of the state in which the federal district court sits.[5] The only limitations on service of process under section 12 of the Clayton Act are those general due process principles articulated in *International Shoe* and subsequent cases dealing with the constitutional limits on extra-territorial service of process. As the court said

**2.** Nordica-US was apparently served with process by the United States Marshal on October 2, 1981, after the motion to dismiss was filed. Although it is unclear whether Nordica-Italy was ever served with a copy of the complaint, our disposition of the motion to dismiss on other grounds renders unnecessary our consideration of the insufficient service of process argument.

**3.** In the past, it was unnecessary to decide whether state or federal law governed the personal jurisdiction inquiry in a federal antitrust case since Illinois courts had interpreted that state's long-arm statute as being co-extensive with due process principles. *Braband v. Beech Aircraft Corp.*, 72 Ill.2d 548, 557, 21 Ill.Dec. 888, 892, 382 N.E.2d 252, 256 (1978); *Nelson v. Miller*, 11 Ill.2d 378, 143 N.E.2d 673 (1957). Recently, however, the Illinois Supreme Court has indicated its inclination to construe the Illinois Long-Arm Statute, Ill.Rev.Stat. ch. 110, § 17 (1979), more restrictively than would be required under traditional due process principles enunciated in *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny, thereby developing a body of Illinois law on *in personam* jurisdiction that will be set back to an as yet undetermined extent from the broader parameters of the due process clause. *See Cook Associates, Inc. v. Lexington United*

*Corp.*, 87 Ill.2d 190, 57 Ill.Dec. 730, 429 N.E.2d 847 (1981); *Green v. Advance Ross Electronics Corp.*, 86 Ill.2d 431, 56 Ill.Dec. 657, 427 N.E.2d 1203 (1981).

**4.** Rule 4(d)(7) provides that service may be made upon an individual or a corporation ". . . in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any defendant in an action brought in the courts of general jurisdiction of that state."

**5.** It should be noted that section 12 only provides for service of process on corporate defendants. Resort must still be had to state long-arm statutes to reach individual or partnership defendants in an antitrust action. *See, e.g., United States Dental Institute v. American Association of Orthodontists*, 396 F.Supp. 565 (N.D.Ill.1975); *Metropolitan Sanitary District of Greater Chicago v. General Electric Company*, 35 F.R.D. 131 (N.D.Ill.1964). State law also controls the determination of personal jurisdiction over a foreign corporation with regard to any state law counts appended to a federal antitrust claim. *See Call Carl, Inc. v. BP Oil Corporation*, 391 F.Supp. 367, 376–77 (D.Md. 1975).

in *Black v. Acme Markets, Inc.*, 564 F.2d 681, 684 (5th Cir. 1977), "[i]n such cases, the requirements of state long-arm statutes are simply irrelevant to the in personam jurisdiction of a federal court."[6] *See also* 14 Von Kalinowski, *Antitrust Laws and Trade Regulation* § 104.02[6] at 104–27.13—104–27.15 (1981).

■ Venue, the other threshold inquiry with which we are concerned at this early stage in these proceedings, may be established under the special venue provisions of the Clayton Act, 15 U.S.C. §§ 15, 22, or under the general federal venue provisions applicable to non-diversity cases, 28 U.S.C. § 1391(b), (c). It is clear that the venue provisions of the Clayton Act are not to be applied exclusively in antitrust cases; they merely supplement the general rule. *Ohio-Sealy Mattress Manufacturing Co. v. Kaplan*, 429 F.Supp. 139, 140 (N.D.Ill.1977); *C. C. P. Corporation v. Wynn Oil Company*, 354 F.Supp. 1275, 1279 (N.D.Ill.1973); *A. B. C. Great States, Inc. v. Globe Ticket*, 310 F.Supp. 739 (N.D.Ill.1970). In the instant case, Sportmart contends that venue is properly laid in this district because the Nordica defendants transact business here within the meaning of 15 U.S.C. § 22 and because the claim arose here within the meaning of 28 U.S.C. § 1391(b).

It is established that, as far as the Court's power over a non-resident corporate defendant in an antitrust action is concerned, the jurisdiction and venue analyses are virtually congruent, since both are controlled by general due process principles. *United States v. Scophony Corporation*, 333 U.S. 795, 68 S.Ct. 855, 866, 92 L.Ed. 1091 (1948); *Eastman Kodak Company v. Southern Photo Materials Co.*, 273 U.S. 359, 370, 47 S.Ct. 400, 402, 71 L.Ed. 684 (1927); *Smokey's of Tulsa, Inc. v. American Honda Motor Co.*, 453 F.Supp. 1265, 1267 (E.D.Okl.1978); *Ze-*

*nith Radio Corp. v. Matsushita Electric Industrial Co., Ltd.*, 402 F.Supp. 262, 317 (E.D.Pa.1975); *C. C. P. Corporation v. Wynn Oil Company*, 354 F.Supp. 1275, 1278 (N.D.Ill. 1973); *Pacific Tobacco Corporation v. American Tobacco Co.*, 338 F.Supp. 842, 844 (D.Or.1972). If venue is proper, then personal jurisdiction may be obtained over the defendants by extra-territorial service of process. If venue is improper, then the personal jurisdiction issue is moot since the court would not entertain the action in any event. With these principles in mind, we proceed to a discussion of the merits of the motion to dismiss in the case at bar.

In *United States v. Scophony Corporation*, 333 U.S. 795, 807–08, 68 S.Ct. 855, 961–62, 92 L.Ed. 1091 (1948), the Supreme Court stated that "[t]he practical, everyday business or commercial concept of doing business or carrying on business 'of any substantial character' [is] the test of venue" under the "transacts business" language in section 12 of the Clayton Act. Since *Scophony*, the lower federal courts have consistently applied that practical test in determining whether venue is proper over a nonresident corporate defendant, domestic or foreign. *See Caribe Trailer Systems, Inc. v. Puerto Rico Maritime*, 475 F.Supp. 711, 716 (D.D.C.1979); *Smokey's of Tulsa, Inc. v. American Honda Motor Co.*, 453 F.Supp. 1265, 1268 (E.D.Okl.1978); *Chromium Industries, Inc. v. Mirror Polishing & Plating Co., Inc.*, 448 F.Supp. 544, 550 (N.D.Ill.1978); *Zenith Radio Corporation v. Matsushita Electric Industrial Co., Ltd.*, 402 F.Supp. 262, 318–19 (E.D.Pa.1975). Whether a defendant has transacted business within a particular district sufficient to create venue is a factual question to be determined in each individual case. *Id.* Temporally, a corporation must have transacted business in the district at least at the time the cause of action accrued, if not when the complaint

---

**6.** In *Black v. Acme Markets, Inc., supra,* the court went on to decide the jurisdictional question under the Texas long-arm statute because the parties had argued the case in that context. Unlike the case at bar, however, the Texas long-arm was apparently co-extensive with the due process clause so that the result in that case was identical to the result that would have

obtained under general due process principles. As the court noted, "[j]ust as there are many roads to Rome, there is more than one avenue to personal jurisdiction in antitrust cases." 564 F.2d at 684. The court's statement is accurate, however, only so long as the state and federal tests for personal jurisdiction are the same in a particular case.

was filed. *Lee v. Ply\*Gem Industries, Inc.,* 593 F.2d 1266, 1271–72 (D.C.Cir.1979); *Board of County Commissioners v. Wilshire Oil Company of Texas,* 523 F.2d 125, 131–32 (10th Cir. 1975); *Eastland Construction Company v. Keasbey & Mattison Co.,* 358 F.2d 777, 780 (9th Cir. 1966); *Sunbury Wire Rope Manufacturing Co. v. United States Steel Corp.,* 230 F.2d 511, 512 (3d Cir. 1956); *Redmond v. Atlantic Coast Football League,* 359 F.Supp. 666 (N.D.Ill.), *affirmed,* 478 F.2d 1405 (7th Cir. 1973).

In the case at bar, Sportmart contends that the Nordica defendants transact business in this district because: (1) Nordica products are sold and advertised in Illinois; (2) Nordica-Italy purportedly controlled defendant RNC, a domestic distributor of Nordica products which concededly transacted business in this district, during the time period covered by the complaint; (3) Nordica-US, a wholly-owned subsidiary of Nordica-Italy, has been the exclusive domestic distributor of Nordica products since early January, 1982, with substantial sales in this district; and (4) Nordica-US is merely a continuation of the ongoing business of RNC with respect to the distribution of Nordica products. Taken singly or together, however, these factors do not compel the conclusion that either Nordica defendant is subject to personal jurisdiction in this district or that venue is properly laid here.

■ Those courts that have considered the question in an antitrust context have tended to reject the notion that a foreign corporation transacts business in a district simply because its products are sold in the district in the absence of other evidence that the sales are made by a company controlled by the foreign manufacturer. *See,* *e.g., O.S.C. Corporation v. Toshiba America, Inc.,* 491 F.2d 1064, 1066 (9th Cir. 1974); *Smokey's of Tulsa, Inc. v. American Honda Motor Co., Inc.,* 453 F.Supp. 1265 (E.D.Okl. 1978). In order to support the exercise of jurisdiction and venue over the foreign corporation, the relationship between the foreign and local corporations must be such that one is merely the alter ego of the other. *Wells Fargo & Company v. Wells Fargo Express Company,* 556 F.2d 406, 425 (9th Cir. 1977). That clearly was not the case as between RNC and Nordica-Italy at the time of the wrongs alleged in the complaint.

RNC is a Delaware corporation with headquarters in Williston, Vermont. Nordica-Italy has a 34 percent minority interest in the company. Rossignol owns the remaining 66 percent of RNC. Of the five members of the board of directors of RNC, only two are also on the five member Nordica-Italy board. Between 1976 and the time period covered in Sportmart's complaint filed in September, 1981, RNC was the exclusive United States distributor for Nordica products. During that time, sales between Nordica-Italy and RNC were negotiated on an arm's length basis. Title to the goods sold passed in Italy, and RNC bore responsibility for shipping the goods to this country as well as the risk of loss. RNC was responsible for its own advertising, accounting, legal work, bookkeeping services, and pension management.[7] The books and records of the two companies were always separately maintained. No RNC employees left that company to work for Nordica-Italy or vice-versa during the time preceding the filing of Sportmart's complaint. Under these facts,[8] it cannot be

---

**7.** Although Nordica-Italy monitored RNC's financial records and performance activity, it did not participate in such operating decisions as reviewing sales policies and prices, warehousing, salaries and promotions, or collection of accounts receivable and inventory according to the second affidavit filed by Giovanni Vaccari, a director and officer of the Italian company. *See* Vaccari Second Affidavit ¶ 4. Even a parent corporation, let alone a minority shareholder, is permitted to engage in "limited inter-organizational activities such as record reporting or monitoring" without destroying its corporate separateness for jurisdictional purposes. *Tiger Trash v. Browning Ferris Industries, Inc.,* 560 F.2d 818, 823 (7th Cir. 1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978).

**8.** The facts stated herein were garnered from the two affidavits filed by Giovanni Vaccari of Nordica-Italy in support of the motion to dismiss. Sportmart has not filed any affidavit to rebut the statements in the Vaccari affidavits

said that RNC was the alter ego of Nordica-Italy so that Nordica-Italy would be subject to the jurisdiction of a court wherever RNC did business or that venue as to the Italian company would be proper in those jurisdictions. Indeed, one of the reasons that Nordica-Italy established Nordica-US was apparently so that it could exert more control over the marketing and distribution of its products in the United States, than it was able to exert over RNC during the previous five years. *See* Vaccari Second Affidavit at ¶ 3.

The Court has searched in vain, however, for the legal significance in the argument that after the cause of action alleged in Sportmart's complaint accrued and after that complaint was filed, Nordica-US commenced operations and proceeded to transact business in this district, replacing RNC as the exclusive distributor of Nordica products. Whatever the relationship may be between Nordica-Italy and Nordica-US at this juncture, a question we need not now decide, it is clear that the relevant time period for jurisdiction and venue purposes is the time that the cause of action accrued. *See Lee v. Ply\*Gem Industries, Inc., supra; Board of County Commissioners v. Wilshire Oil Company of Texas, supra; Eastland Construction Co. v. Keasbey & Mattison Co., supra; Sunbury Wire Rope Manufacturing Co. v. United States Steel Corp., supra; Redmond v. Atlantic Coast Football League, supra.* The cause of action alleged in Sportmart's complaint arose in August, 1981, when the defendants allegedly conspired together and refused to accept orders for Rossignol skis and Nordica boots for delivery to Sportmart's Clark Street location. *See* Complaint at ¶ 17. Nordica-US did not commence operations until January 1, 1982, approximately five months later. The complaint thus fails to allege a sufficient jurisdictional nexus between the cause

of action alleged and the transaction of business by Nordica-US at the time the cause of action accrued. Although there are allegations in the papers filed in connection with the pending motion to the effect that, since the complaint was filed, Nordica-US has begun distributing Nordica products in this district and has refused to accept Sportmart's orders for Nordica boots, those allegations go beyond the period involved in the complaint presently on file and are thus jurisdictionally irrelevant.[9]

■ Sportmart's other arguments in support of personal jurisdiction and venue are also unavailing. The fact that Sportmart may have suffered injury here, without more, will not support the exercise of personal jurisdiction or create venue in an antitrust case such as the one at bar. As the court stated in *Redmond v. Atlantic Coast Football League*, 359 F.Supp. 666, 669 (S.D. Ind.), *affirmed*, 478 F.2d 1405 (7th Cir. 1973), "[w]hile it may be appropriate in tort cases to find that the plaintiff's cause of action arose in the jurisdiction where the injury occurred, the current trend is to view this as a simplistic rationale to which antitrust actions are not susceptible." The court went on to apply a 'weight of the contacts' approach to venue. *Accord: Caribe Trailer Systems, Inc. v. Puerto Rico Maritime*, 475 F.Supp. 711, 719 (D.D.C. 1979); *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*, 291 F.Supp. 252, 260 (E.D.Pa.1968).

■ Similarly, Sportmart's attempt to create jurisdiction or venue over both Nordica defendants in this district on the basis of the contacts of their alleged co-conspirators is unpersuasive. Most courts that have considered the so-called co-conspirator theory of venue after the Supreme Court's rejection of it in dictum in *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 74

with respect to the relationship between Nordica-Italy and RNC.

**9.** Although it appears from the record before us at this time that the newly-created Nordica-US is not merely a continuation of RNC, but rather, is an independent company in its own right, though wholly-controlled ultimately by Nordica-Italy, we need not decide that question at this time. As we stated earlier, conduct by Nordica-US after the accrual of Sportmart's cause of action is irrelevant to the jurisdictional inquiry under the complaint as it stands at the present time.

S.Ct. 145, 98 L.Ed. 106 (1953), have also declined to find venue appropriate over a non-resident corporate defendant solely on the basis of the alleged conduct of its co-conspirators in the forum state. *See Piedmont Label Company v. Sun Garden Packing Company*, 598 F.2d 491 (9th Cir. 1979); *San Antonio Telephone Co. v. American Telephone & Telegraph Co.*, 499 F.2d 349, 351 n.3 (5th Cir. 1974); *H. L. Moore Drug Exchange, Inc. v. Smith, Kline & French Laboratories*, 384 F.2d 97, 98 (2d Cir. 1967); *Cascade Steel Rolling Mills, Inc. v. C. Itoh and Company*, 499 F.Supp. 829 (D.Or.1980); *Chromium Industries, Inc. v. Mirror Polishing & Plating Co., Inc.*, 448 F.Supp. 544 (N.D.Ill.1978). This Court also declines to follow the co-conspirator theory of venue which, according to the court in *Piedmont Label Co., supra*, "was given what has been called its 'illegitimate birth' by a decision of [the Ninth Circuit] more than thirty years ago in *Giusti v. Pyrotechnic Industries*, [156 F.2d 351 (9th Cir. 1946)]." *Piedmont Label Co., supra*, 598 F.2d at 493.[10]

Finally, this Court rejected the national contacts approach to personal jurisdiction, advanced herein by Sportmart with regard to Nordica-Italy, in *Ingersoll Milling Machine Co. v. J. E. Bernard & Co.*, 508 F.Supp. 907, 910 n.4 (N.D.Ill.1981). In that opinion we noted that both the courts of appeals that have considered the national contacts approach have rejected it as well. *See Wells Fargo & Company v. Wells Fargo Express Company*, 556 F.2d 406 (9th Cir. 1977); *Honeywell, Inc. v. Meltz Apparatewerke*, 509 F.2d 1137 (7th Cir. 1975).

Accordingly, the Nordica defendants' motion to dismiss for lack of personal jurisdiction and improper venue is granted. It is so ordered.

---

**10.** Sportmart's eleventh-hour attempt to base venue upon a telex purportedly sent to Nordica-Italy by RNC requesting Nordica's assistance in cutting off the supply of Nordica boots to unauthorized dealers in five cities, including Chicago, is misplaced. In a system based upon due process principles that look to whether a non-resident has purposefully availed itself of the benefits of the forum, the unilateral act of an unrelated third party has no significance.