R. J. SCHNABEL, d/b/a Rollies Import Motors, Plaintiff,

v.

VOLKSWAGEN OF AMERICA, INC., and Import Motors of Chicago, Inc., Defendants.

Civ. No. 905.

United States District Court
N. D. Iowa, E. D.

July 13, 1960.

William C. Ball, Waterloo, Iowa, for plaintiff.

Walter Herzfeld, New York City, V. Craven Shuttleworth, Harry. E. Wilmarth, Elliott, Shuttleworth & Ingersoll, Cedar Rapids, Iowa, for defendant Volkswagen of America, Inc.

Arthur C. Chapman, David, Fainman, Abrahams, & Chapman, Chicago, Ill., for defendants.

Leo J. Cohrt, Swisher, Cohrt, Swisher & Finch, Waterloo, Iowa, for defendant Import Motors of Chicago, Inc.

GRAVEN, District Judge.

Each of the defendants has moved to quash the service of summons made upon it. The plaintiff is a citizen of Iowa and a resident of the City of Waterloo, Black Hawk County. The defendant Volkswagen of America, Inc., is a corporation organized and existing under the laws of the State of New Jersey. The defendant Import Motors of Chicago, Inc., is a corporation organized and existing under the laws of the State of Illinois. During the period of time here pertinent the first named defendant was an exclusive importer of automobiles manufactured by Volkswagenwerk G.m.b.H., a corporation organized and existing under the laws of the German Federal Republic, and the last named defendant was a distributor of those automobiles.

In his complaint the plaintiff alleges in substance that late in 1955 he entered a franchise agreement under which he was to be the franchise dealer for Volkswagen automobiles in the City of Waterloo and surrounding area for the period

from January 1, 1956, to December 31, 1956; that the defendants failed to act in good faith in the matter of complying with the terms of the franchise and the renewal and termination thereof. He asks damages against the defendants for the alleged wrong in the sum of $180,000 together with attorneys' fees. The sum of $180,000 represents treble damages. His action is based upon what is referred to as the "Dealers' Act." That Act was enacted as Public Law 1026 of the second session of the 84th Congress, approved August 8th, 1956. 70 Stat. 1125, 15 U.S. C.A. §§ 1221–1225. It will be hereinafter referred to as the Dealers' Act.

Neither of the defendants has ever qualified to do business in the State of Iowa nor designated an agent in Iowa for service of process. Service of process was made upon the defendant Volkswagen of America, Inc., in the State of New Jersey and upon the defendant Import Motors of Chicago, Inc., in the State of Illinois. Each defendant has by motion challenged the service of process made upon it.

Rule 4(f) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides, in part, as follows:

"All process * * * may be served anywhere within the territorial limits of the state in which the district court is held and, when a statute of the United States so provides, beyond the territorial limits of that state. * * *"

In the present case extraterritorial services of process were made. Under Rule 4(f) such service is valid only where a statute of the United States provides for that manner of service.

It is the contention of the plaintiff that the services of process here in question were made in a manner provided by a statute of the United States. It is the contention of the defendants that there is no statute of the United States so providing. The contentions of the parties require a consideration of the Dealers' Act and certain antitrust legislation. The Dealers' Act is as follows:

"AN ACT

"To supplement the antitrust laws of the United States, in order to balance the power now heavily weighted in favor of automobile manufacturers, by enabling franchise automobile dealers to bring suit in the district courts of the United States to recover damages sustained by reason of the failure of automobile manufacturers to act in good faith in complying with the terms of franchises or in terminating or not renewing franchises with their dealers.

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That as used in this Act.

"(a) The term 'automobile manufacturer' shall mean any person, partnership, corporation, association, or other form of business enterprise engaged in the manufacturing or assembling of passenger cars, trucks, or station wagons, including any person, partnership, or corporation which acts for and is under the control of such manufacturer or assembler in connection with the distribution of said automotive vehicles.

"(b) The term 'franchise' shall mean the written agreement or contract between any automobile manufacturer engaged in commerce and any automobile dealer which purports to fix the legal rights and liabilities of the parties to such agreement or contract.

"(c) The term 'automobile dealer' shall mean any person, partnership, corporation, association, or other form of business enterprise resident in the United States or in any Territory thereof or in the District of Columbia operating under the terms of a franchise and engaged in the sale or distribution of passenger cars, trucks, or station wagons.

"(d) The term 'commerce' shall mean commerce among the several States of the United States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or among the Territories or between any Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation.

"(e) The term 'good faith' shall mean the duty of each party to any franchise, and all officers, employees, or agents thereof to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party: *Provided,* That recommendation, endorsement, exposition, persuasion, urging or argument shall not be deemed to constitute a lack of good faith.

"Sec. 2. An automobile dealer may bring suit against any automobile manufacturer engaged in commerce, in any district court of the United States in the district in which said manufacturer resides, or is found, or has an agent, without respect to the amount in controversy, and shall recover the damages by him sustained and the cost of suit by reason of the failure of said automobile manufacturer from and after the passage of this Act to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer: *Provided,* That in any such suit the manufacturer shall not be barred from asserting in defense of any such action the failure of the dealer to act in good faith.

"Sec. 3. Any action brought pursuant to this Act shall be forever barred unless commenced within three years after the cause of action shall have accrued.

"Sec. 4. No provision of this Act. shall repeal, modify, or supersede, directly or indirectly, any provision of the antitrust laws of the United. States.

"Sec. 5. This Act shall not invalidate any provision of the laws of any State except insofar as there is a direct conflict between an express provision of this Act and an express provision of State law which can not be reconciled."

The contentions of the parties revolve around the question as to the relationship between the Dealers' Act and the Clayton Act. 38 Stat. 730 (1914), 15 U.S.C.A. §§ 12–27. Section 12 of the Clayton Act (Sec. 22 of 15 U.S.C.A.) provides:

"Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; *and all process in such cases may be served in the district of which it is an inhabitant,* or wherever it may be found." (Emphasis supplied.)

While Section 2 of the Dealers' Act (Sec. 1222 of 15 U.S.C.A.) provides that an automobile dealer may bring suit against a manufacturer in any district of the United States in which the manufacturer resides, or is found or has an agent, without respect to the amount in controversy, it does not provide, as does Section 12 of the Clayton Act, that process may be served in any district in which the manufacturer is an inhabitant or is found or transacts business.

It is the contention of the plaintiff that the Dealers' Act is such an addition to and a part of the Clayton Act as to permit the extraterritorial service of process authorized by the latter Act.

It is frequently troublesome to ascertain the connection and relationship

between the various antitrust acts. See Nashville Milk Co. v. Carnation Co., 1958, 355 U.S. 373, 78 S.Ct. 352, 2 L.Ed. 2d 340, footnote 8 of which indicates that the codifiers of the United States Code have encountered difficulty in the codifying of antitrust laws. The original antitrust act was the Sherman Act of 1890. 26 Stat. 209 (1890), 15 U.S. C.A. §§ 1–7. This was followed by the Federal Trade Commission Act of 1914, 38 Stat. 717, 15 U.S.C.A. §§ 41–51, and the Clayton Act. 38 Stat. 730, 15 U.S. C.A. §§ 12–27. The next major antitrust legislation was the Robinson-Patman Act. 49 Stat. 1526 (1936), 15 U.S. C.A. §§ 13, 21a. It specifically amended Section 2 of the Clayton Act. In 1950 Congress enacted the Celler-Kefauver Act. 64 Stat. 1125 (1950), 15 U.S.C.A. §§ 18, 21. It amended the Clayton Act. It had to do with the regulation of stock purchases and mergers which would lessen competition or tend to create a monopoly. In 1955 Congress enacted another act which specifically amended the Clayton Act. 69 Stat. 283 (1955), 15 U.S.C.A. §§ 15a and 15b. One section of that Act related to actions by the United States and the other section provided a four-year limitation period. The antitrust laws above referred to are not intended to be a complete list of such laws. Statutes which are referred to as antitrust statutes are numerous and varied. In the case of Nashville Milk Co. v. Carnation Co., 1958, 355 U.S. 373, 78 S.Ct. 352, 2 L.Ed.2d 340, in footnote 4 thereof, it is stated that up to the date of that decision a total of seventy-one statutes were listed in a compilation entitled Antitrust Laws made up in the Document Room of the House of Representatives.

The plaintiff, in support of his contention that the Dealers' Act comes within the scope of Section 12 of the Clayton Act providing for extraterritorial service of process, calls attention to the title of the Act and to certain legislative history. In the title of the Act it is stated that the Act is to supplement the antitrust laws of the United States. The de-

fendants contend that the plaintiff's reliance on the title of the Act and the legislative history of the Act is misplaced. It would seem desirable to give consideration to certain portions of the legislative history of the Act.

The Dealers' Act was started on its way to enactment by a bill introduced by Senators O'Mahoney, Monroney, Langer, Hennings, Neely, and Payne as S. 3879, 84th Congress, 2d Session. It was adopted by the Senate with amendments on June 19th, 1956. 102 Congressional Record 105, 68 et seq. At the same time S. 3879 was introduced a Subcommittee of the Senate Committee on Interstate and Foreign Commerce was holding extensive hearings with respect to the automobile industry with particular attention being given to dealer-manufacturer relationships. Under consideration by this Subcommittee were a number of bills which had been introduced into the Senate. Among those bills were the following:

"S. 2929. A bill to amend the Federal Trade Commission Act with respect to certain contracts, agreements, or franchises to enable manufacturers of automobiles and trucks and their franchise dealers to protect their goodwill in the business of manufacturing and distributing automobiles and trucks made or sold by them by restricting franchise dealers from reselling to certain unauthorized persons.

"S. 3110. A bill to prevent automobile manufacturers from coercing automobile dealers to purchase unwanted merchandise.

"S. 3543. A bill to protect the public in the operation of, and in performance under warranties on, delicate, complicated, sensitive or inherently dangerous machinery, mechanisms, or apparatus sold in interstate commerce.

"S. 3946. A bill to amend the Federal Trade Commission Act with respect to certain unfair methods of competition and certain unfair prac-

tices in the distribution of new motor vehicles in interstate commerce."

S. 3879 above referred to, as amended, was finally enacted as the Dealers' Act.

Section 11 of S. 3110 contained the exact language of Section 12 of the Clayton Act which, as heretofore noted, authorizes extraterritorial service of process. S. 2929, 3543 and 3946 all expressly amended the Federal Trade Commission Act.

When the Dealers' Act was first introduced into the Senate as S. 3879, Section 3 thereof provided that the dealer "shall recover two-fold the damages by him sustained and the cost of suit, including a reasonable attorneys' fee."

That provision was the subject of discussion when the bill was under consideration by the Senate. In that connection the following appears (102 Congressional Record 10585):

"Mr. Bricker. The Senator will note that the amendment which I have prepared would limit the damages to actual damages rather than to double damages. Double damages are punitive. I think we must consider that the bill affects interstate commerce, and that there is no reason for punitive damages to be awarded to any party if he recovers actual damages."

S. 3879 was then amended by the Senate to provide only for "compensatory damages." After hearings the House Committee on the Judiciary further amended the damage provision by deleting the word "compensatory" and also deleted the provisions for attorneys' fees. It was in this form that S. 3879 was passed and became law. As to this change, the House Committee on the Judiciary stated (House Report 2850, 84th Congress, 2d Session, page 8):

"The committee had deleted the right to a reasonable attorney's fee as an element of damages. Under the amended bill, the dealer would be limited to recovery of damages sustained and the cost of suit."

In its original form S. 3879 contained no statute of limitations. In 100 Congressional Record 10574 there is reported a colloquy which took place between Senator Curtis and Senator O'Mahoney as to the matter of a statute of limitations under the Act. The Act as finally enacted contains a three-year period of limitation. As heretofore noted, Congress had by an Act approved July 5th, 1955 (69 Stat. 283, 15 U.S.C.A. § 15b), provided for a four-year statute of limitations for actions under the Clayton Act.

In House Report No. 2850 on S. 3879 the House Committee on the Judiciary reported, in part, as hereinafter set forth, 3 United States Code Congressional Service and Administrative News (1956), p. 4596:

"The Committee on the Judiciary, to whom was referred the bill (S. 3879) to supplement the antitrust laws of the United States, in order to balance the power now heavily weighted in favor of automobile manufacturers, by enabling franchise automobile dealers to bring suit in the district courts of the United States to recover compensatory damages sustained by reason of the failure of automobile manufacturers to act in good faith in complying with the terms of franchises or in terminating or not renewing franchises with their dealers, having considered the same, report favorably thereon with amendments and recommend that the bill do pass.

### PURPOSE OF THE BILL AS AMENDED

"The purpose of the bill as amended by the committee is to supplement the antitrust laws of the United States so as to permit a franchised automobile dealer to bring suit for damages, without regard to the amount in controversy, in United States district courts for the failure of the automobile manufacturer to act in good faith in performing or complying with any of

the terms or provisions of the franchise, or in terminating, canceling, or not renewing the dealer's franchise. The bill creates a cause of action where none previously existed in that, irrespective of contractual provisions, it grants a right of review in the Federal courts of disputes between automobile manufacturers and their dealers involving the good faith of the manufacturer in complying with, in terminating, or in not renewing the franchises.

"In addition to the provisions of the written agreements or contracts between automobile manufacturers and dealers, the bill in its definition of good faith imposes the duty on each party to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party. Unless the transactions between the parties involve coercion or intimidation, or threats of coercion or intimidation, the duty of good faith imposed by the bill does not prohibit recommendation, endorsement, exposition, persuasion, urging or argument normal in competitive commercial relationships.

### REASONS FOR BILL

"Concentration of economic power in the automobile manufacturing industry of the United States has developed to the point where legislation is required to remedy the manifest disparity in the ability of franchised dealers of automotive vehicles to bargain with their manufacturers. Investigations of the automobile industry, moreover, demonstrate a continuing trend toward greater concentration, as well as abuse by the manufacturers of their dominant position with respect to their dealers. These investigations have disclosed practices and conditions which require new legislative methods and a change in established con-

cepts. The bill as amended proceeds from the conclusion that in the automobile industry concentration of economic power has increased to the degree that traditional contractual concepts are no longer adequate to protect the automobile dealers under their franchises."

It is obvious that the Dealers' Act does have as its objective the avoidance of abuse of economic power. Such is one of the objectives of the antitrust laws. It is clear that the Dealers' Act was intended to supplement those laws. It also seems clear that the Dealers' Act is part of a broad evolutionary antitrust program. However, there is still to be answered the specific question as to whether Congress, in enacting the Dealers' Act, intended to make it a part of or an addition to the Clayton Act.

Section 12 of the Clayton Act provides that it is to be applicable to actions "under the antitrust laws." Section 1 of the Clayton Act defines what the term "antitrust laws" means as used in the Act. It provides that the term "antitrust laws," as used therein, shall include four specific acts which are the Sherman Act, parts of the Wilson Tariff Act, an Act amending the Wilson Tariff Act, and the Clayton Act itself. In this connection the defendants cite and rely upon the case of Nashville Milk Co. v. Carnation Co., 1958, 355 U.S. 373, 78 S.Ct. 352, 2 L.Ed.2d 340, and the companion case of Safeway Stores, Inc. v. Vance, 1958, 355 U.S. 389, 78 S.Ct. 358, 2 L.Ed.2d 350, in which the plaintiffs alleged that they had been injured by the sales made by the defendants at unreasonably low prices in violation of Section 3 of the Robinson-Patman Act. They sought treble damages and injunctive relief which are provided for under Sections 4 and 16 of the Clayton Act to private plaintiffs in actions under the "antitrust laws." The United States Supreme Court held that the enumeration of the four acts referred to in Section 1 of the Clayton Act were exclusive. In the Nashville Milk Co. case Mr. Justice Harlan, speaking for a majority of the

Court, stated (at pages 375, 376 of 355 U.S., at page 354 of 78 S.Ct.):

" * * * In light of the much other so-called antitrust legislation enacted prior and subsequent to the Clayton Act, it seems plain that the rule *expressio unius exclusio alterius* is applicable, and that the definition contained in § 1 of the Clayton Act is exclusive. * * * "

It is the view of the plaintiff that the decisions in the Nashville Milk Co. case and the Safeway Stores case are not determinative, among other reasons, because Section 3 of the Robinson-Patman Act was a penal section and that what the plaintiffs were seeking was to have a violation of a penal section in the Robinson-Patman Act form the basis for the private remedies afforded by Sections 4 and 16 of the Clayton Act. It is the view of the plaintiff that an analogous or similar situation is not disclosed in the present case. It is to be noted that the decisions in the Nashville Milk Co. and Safeway Stores cases were 5 to 4 decisions, which is a somewhat precarious majority.

However, even if it should be held that the term "antitrust laws" in the Clayton Act did encompass cases arising under antitrust acts other than the four acts specified in Section 1 of that Act, the question would still arise as to whether Congress in enacting a particular antitrust act manifested the intent that one or more or all of the pertinent provisions of the Clayton Act were to be available to those bringing actions under the particular act.

It is the claim of the plaintiff that in enacting the Dealers' Act it was the intent of Congress to permit those bringing actions under that Act to make use of the liberalized venue and process provisions provided by Section 12 of the Clayton Act. The plaintiff by asking for treble damages and attorneys' fees also seeks to make use of the more liberal provisions of Section 4 of the Clayton Act which provides for the recovery of treble damages and attorneys' fees.

The defendants argue that the claim of the plaintiff in substance means that he asserts the right to pick out one or more sections of the Clayton Act in an action brought by him under the Dealers' Act on the theory that they are encompassed by the Dealers' Act and ignore or reject conflicting and different pertinent sections contained in the latter Act. The defendants further argue that if the Dealers' Act does encompass the Clayton Act it encompasses all pertinent sections and not merely the one section relating to venue and service and that if such is the situation the result would be a statutory hodgepodge, since many of the provisions of the Dealers' Act are in direct conflict with similar pertinent provisions of the Clayton Act. The defendants urge that Congress could not have intended such a result.

The Dealers' Act does not purport to amend the Clayton Act, for Section 4 of the Act specifically provides:

"No provision of this Act shall repeal, modify, or supersede, directly or indirectly, any provision of the antitrust laws of the United States."

The Clayton Act and the Dealers' Act are in conflict on many different matters. Under the Clayton Act triple damages are recoverable. Under the Dealers' Act only actual damages are recoverable. Under the Clayton Act attorneys' fees are recoverable. Under the Dealers' Act they are not recoverable. Under the Clayton Act the statute of limitations is four years. Under the Dealers' Act the statute of limitations is three years. The Clayton Act makes a distinction between individuals and corporations in the matter of venue. Under the Dealers' Act no distinction is made between individuals and corporations on the matter of venue. Under the Clayton Act the venue in the case of corporations is where an inhabitant is "found or transacts business." Under the Dealers' Act the venue in all cases is where the defendant resides or is found or has an agent. As heretofore noted, the Clayton Act provides for extraterritorial service of process; the Dealers' Act does not.

It is the view of the Court that the plain provisions of the Dealers' Act, its legislative history and statutory background are all evidence of an intent on the part of Congress that the Act is not an addition to or a supplement to the Clayton Act. As heretofore noted, many of the pertinent provisions of the two Acts are in sharp conflict. They are noticeably in such conflict as to the statute of limitations, damages recoverable, and the recovery of attorneys' fees. There is a variance between the provisions relating to venue and process.

It would seem especially difficult to impute to Congress an intent to make the treble damage provision and attorneys' fees provision of the Clayton Act available to plaintiffs bringing actions under the Dealers' Act when it deliberately deleted a provision of S. 3879 providing for double damages and recovery of attorneys' fees. It is also difficult to impute to Congress the intent to encompass other sections of the Clayton Act by the Dealers' Act when it legislated in specific detail as to the subject matter of those same sections in the latter Act.

It is the view of the Court that although the Dealers' Act was a part of an evolutionary program in the antitrust field, it was the intent of Congress that the rights and remedies of one bringing an action under the Dealers' Act are found and contained in that Act, and that Act stands on its own as to those matters.

It is the holding of the Court that the provision in the Clayton Act for the extraterritorial service of process is not available to those bringing actions under the Dealers' Act.

It is the ruling of the Court that the services of process in question were not valid services of process.

It Is Hereby Ordered that the service of process made upon the defendant Volkswagen of America, Inc., in the State of New Jersey and the service of process made upon the defendant Import Motors of Chicago, Inc., in the State of Illinois be and they are hereby quashed.