**HOFFMAN MOTORS CORPORATION,**
**Plaintiff,**

v.

**ALFA ROMEO S.p.A., Alfa Romeo Inc.**
**and Arturo Reitz, Defendants.**

United States District Court
S. D. New York.

July 28, 1965.

Simpson, Thacher & Bartlett, New York City, for plaintiff, Stephen P. Duggan, Jr., Richard Hawkins, Arthur I. Settles, Joseph J. Ackell, New York City, of counsel.

Fink & Pavia, New York City, for defendants, David A. Botwinik, Jordan E. Ringel, Murray Mogel, New York City, of counsel.

FREDERICK van PELT BRYAN, District Judge.

Plaintiff Hoffman Motors Corporation (Hoffman Corp.) is a Delaware corporation authorized to do business in New York, with its principal offices in Manhattan. Defendant Alfa Romeo S.p.A. (S.p.A.) is an Italian corporation manufacturing motor cars in Italy. Its subsidiary, defendant Alfa Romeo Inc. (Alfa Inc.) is a New York corporation. Defendant Reitz is an Italian citizen, resident in New Jersey, who is an employee of S.p.A. and an officer of Alfa Inc.

The complaint alleges seven separate claims for relief. Five are based on fed-

eral statutes, one (I) on the Automobile Dealers Act, 15 U.S.C. § 1221 et seq., and four (III, IV, V and VI) on the Robinson-Patman Price Discrimination Act, 15 U.S.C. § 13. Two claims for breach of fiduciary relationship and prima facie tort are based on state law and are alleged to be pendent to the claim under the Automobile Dealers Act (II, VII).

Defendants move pursuant to Rule 12, F.R.Civ.P., for the following relief.

(1) S.p.A. moves for dismissal of the complaint for improper venue and want of personal jurisdiction (Rule 12(b) (2) and (3)).

(2) S.p.A. and Alfa Inc. move for dismissal of the Automobile Dealers Act claim, and with it the two pendent claims, for failure to state a claim upon which relief can be granted (Rule 12(b) (6)).

(3) Both also move to strike parts of the complaint as impertinent, immaterial and scandalous and for a more definite statement of the claims for relief (Rule 12(e) and (f)).

(4) Reitz moves to dismiss the complaint as to him for failure to state a claim on which relief can be granted, for want of personal jurisdiction and for improper venue. (Rule 12(b) (2) (3) and (6)).

The following facts emerge from the affidavits and depositions submitted on the motions:

In 1955 one M. E. Hoffman entered into a franchise agreement with S.p.A. granting him the sole and exclusive right to purchase Alfa Romeo cars which S.p.A. manufactured in Italy for distribution and resale in all of the United States. The agreement provided that it could be assigned by Hoffman to a corporation organized by him and was so assigned.

Plaintiff Hoffman Corp. was organized by Hoffman in 1959.

In 1961 Hoffman, allegedly on behalf of Hoffman Corp., entered into a new franchise agreement with S.p.A. granting exclusive distribution and resale rights on Alfa Romeos for only fourteen states, including New York. The rights formerly held by Hoffman in the other 36 states were granted by S.p.A. to defendant Alfa Inc., 95% of whose stock is owned by S.p.A. The chief executive officer of Alfa Inc. in this country is Reitz, who is also an employee of S.p.A.

The 1961 franchise agreement between Hoffman Corp. and S.p.A. expired in 1963 and was not renewed.

The complaint alleges that the reduction of plaintiff's franchise territory and eventual termination of its franchise resulted from a conspiracy between S.p.A., Alfa Inc. and Reitz to destroy plaintiff's business and appropriate its benefits to themselves. A number of acts by the defendants claimed to be tortious in furtherance of the conspiracy are alleged. It is further alleged that defendants caused S.p.A. to fail to act in good faith in carrying out the provisions of the franchise agreement based on allegations of various acts of bad faith.

All this is alleged to have been in violation of the Automobile Dealers Act, 15 U.S.C. § 1222.[1]

It is further alleged that, during the operation of the franchise agreement, S.p.A. discriminated against plaintiff in favor of Alfa Inc. so as to substantially lessen competition. Such discriminations are alleged to have consisted in lower prices to Alfa Inc., compensation for reasons other than services rendered, compensation not available on a proportionately equal basis to plaintiff for serv-

---

[1] "§ 1222. An automobile dealer may bring suit against any automobile manufacturer engaged in commerce, * * * without respect to the amount in controversy, and shall recover the damages by him sustained and the cost of suit by reason of the failure of said automobile manufacturer * * * to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer: *Provided*, That in any such suit the manufacturer shall not be barred from asserting in defense of any such action the failure of the dealer to act in good faith."

ices rendered, and facilities and services furnished which were not accorded to plaintiff on proportionately equal terms, all in violation of the Robinson-Patman Act and pursuant to the conspiracy.

Thus the controversy plainly arises out of the operation and termination of plaintiff's franchise agreement.

Alfa Inc. was served in New York.

S.p.A. was served by registered mail in Italy. In addition, the general manager of S.p.A. was personally served in Italy by an Italian attorney designated by the Clerk of this Court to serve process and S.p.A.'s New York attorneys, who were also attorneys for Alfa Inc., were personally served here—over their protest.

Reitz was personally served at his office in New Jersey.

### I. Venue as to S.p.A.

#### (a) Robinson-Patman claims.

15 U.S.C. § 22 provides that a suit against a corporation under the antitrust laws may be brought "in any district wherein it * * * transacts business." S.p.A. denies that it "transacts business" in this district and seeks dismissal for improper venue.

The transacting business test of venue under § 22 is "The practical, everyday business or commercial concept of doing or carrying on business 'of any substantial character.'" United States v. Scophony Corp., 333 U.S. 795, 807, 68 S.Ct. 855, 862, 92 L.Ed. 1091 (1948). Each case is governed by its own facts. Abrams v. Bendix Home Appliances, Inc., 96 F.Supp. 3, 5 (S.D.N.Y.1951).

The undisputed facts here show numerous business activities of S.p.A. within this district.

S.p.A. negotiated and signed the 1955 franchise agreement with Hoffman in Manhattan. The 1961 franchise agreement was negotiated and signed by S.p.A., through its president and general manager, in Manhattan. The exclusive sales and distribution rights granted included this district. The franchise required the holder to promote the sale of Alfa Romeo cars. Thus Hoffman Corp. was obligated to display the Alfa Romeo in a "prominent and distinctive manner" in a Park Avenue showroom. Moreover, adequate service facilities for the servicing and maintenance of Alfa Romeos had to be maintained at another Manhattan location, and qualified dealers in important cities had to be appointed.

Under the franchise S.p.A. retained close supervision and control over the franchised operations. It had the right to cancel the franchise of any dealer plaintiff appointed, as well as to approve the terms of the contract. The amount of spare parts kept on hand at the Manhattan repair facility was subject to specification by S.p.A. Even suggested selling prices were subject to its approval. It reserved the right to inspect all the Hoffman Corp. facilities. Disputes arising under the contract were to be resolved by arbitration in New York, under New York law, with service to be made upon attorneys for S.p.A. in Manhattan.

The franchise recites that S.p.A. proposed to organize a subsidiary corporation through which it would assist plaintiff. Alfa Inc. was organized by S.p.A. under New York law, with 95% stock ownership in the parent. Policies for Alfa Inc. were set by S.p.A. in Italy.

Of the five directors of Alfa Inc. in 1961, three were officers or employees of S.p.A., one its president, another its general manager, and the third, Reitz, an employee of some importance. Reitz was the vice-president and treasurer of Alfa Inc. and the chief executive officer of Alfa Inc. in this country. His salary, however, was paid entirely by S.p.A. and his expenses were shared on a 50/50 basis by the two corporations. Reitz regularly transacts business in New York on behalf of both S.p.A. and Alfa Inc.

One of the functions of Alfa Inc. was to approve or disapprove on behalf of S.p.A. warranty claims made on Alfa Romeo cars, including claims of New York purchasers. Warranty claims had previously been handled by direct com-

munication between S.p.A. and Hoffman Corp.

In addition to matters handled through Alfa Inc., S.p.A. directly carried on numerous activities within this district. Reitz, in his capacity as an S.p.A. employee, acted as liaison between S.p.A. in Italy and Hoffman Corp. In this capacity he discussed such matters as the number and model of cars Hoffman Corp. required and warranty procedures on cars purchased from Hoffman Corp. and its dealers.

From 1961 to 1963 at least one other employee of S.p.A. was assigned to visit the Hoffman Corp. offices to examine complaints and claims received from its customers and dealers. Other full time employees of S.p.A. carrying on activities within this district included several mechanics. One such mechanic, a specialist in Alfa Romeo cars, has worked at plaintiff's New York City facilities since 1958.

Five other mechanics were employed by S.p.A. for promotional and educational work in the United States from 1960–1963 and thereafter. These mechanics travelled in three or four trucks supplied by S.p.A. and owned by Alfa Inc., to various Alfa Romeo dealers in and around New York City, including Rockland and Westchester counties. They demonstrated Alfa Romeo cars and gave instructions to dealers and mechanics in repair and maintenance.

■ From these undisputed facts it is obvious that S.p.A. has been consistently carrying on business in this district of a substantial nature and thus "transacts business" so as to meet venue requirements.

The activities of S.p.A. employees with regard to sales, promotion and warranties alone seem sufficient to meet the relatively minimal contacts necessary to constitute transacting of business under the liberally construed requirements of 15 U.S.C. § 22. Compare Green v. United States Chewing Gum Mfg. Co., 224 F.2d 369 (5 Cir. 1955); Rhode Island Fittings Co. v. Grinnell Corp., 215 F.Supp. 198, 201 (D.R.I.1963).

■ But in addition to its direct activities S.p.A. has transacted business through Alfa Inc., its New York subsidiary. Alfa Inc. was an instrumentality used by its foreign parent to perform essential local operations. The parent completely controlled the subsidiary, setting its policies in Italy, appointing its own officers and employees as directors, officers and employees of the subsidiary and paying their salaries. Under such circumstances, the foreign corporate parent will not be permitted to hide behind its local instrumentality. Cognizance will be taken of the fact that the foreign corporation through its subsidiary is actually transacting business within the contemplation of 15 U.S.C. § 22. See Intermountain Ford Tractor Sales Co. v. Massey-Ferguson Ltd., 210 F.Supp. 930 (D.Utah 1962), aff'd per curiam, 325 F.2d 713 (10 Cir. 1963), cert. den. 377 U.S. 931, 84 S.Ct. 1334, 12 L.Ed.2d 296 (1964); Waldron v. British Petroleum Co., Trade Reg.Rep. (1957 Trade Cas.) ¶ 68,653 at p. 72,656 (S.D.N.Y. March 18, 1957); Brewster, Antitrust and American Business Abroad 57 (1958); see also Boryk v. DeHavilland Aircraft Co., 341 F.2d 666 (2 Cir. 1965); Rabinowitz v. Kaiser-Frazer Corp., 198 Misc. 707, 96 N.Y.2d 642 (Sup.Ct.1950), aff'd mem. 278 App.Div. 584, 102 N.Y.S.2d 815 (2nd Dep't 1951), aff'd mem. 302 N.Y. 892, 100 N.E.2d 177.

■ In addition the franchise relationship between S.p.A. and Hoffman Corp. further indicates that S.p.A. transacts business within this district. A foreign manufacturer of cars transacts business by promoting the sale of its products through a distributorship system when the manufacturer retains some control over the distributor. Jeffrey-Nichols Motor Co. v. Hupp Motor Car Corp., 46 F.2d 623 (1 Cir. 1931); see also Fiat Motor Co. v. Alabama Imported Cars, Inc., 110 U.S.App.D.C. 252, 292 F.2d 745 (1961), cert. den. 368 U.S. 898, 82 S.Ct. 175, 7 L.Ed.2d 94; Taca Int'l Airlines S.A. v. Rolls-Royce of England, Ltd., 15 N.Y.2d 97, 204 N.E.2d 329, 256 N.Y.S.2d 129 (1965).

In its agreement S.p.A. retained a large measure of control over the operations of Hoffman Corp., ranging from approving dealers and prices to the quantity of spare parts to be kept on hand.

It is thus plain that S.p.A. through its own employees, through its subsidiary, and through Hoffman Corp. as its distributor, transacts business within this district within the meaning of 15 U.S.C. § 22. Venue on the Robinson-Patman claims is proper.

(b) Automobile Dealers Act claim.

The Automobile Dealers Act, 15 U.S.C. § 1222, provides that a dealer may sue an automobile manufacturer violating the Act in any district in which the manufacturer "resides, or is found, or has an agent." [2]

■ "Agent" is not defined in the Act. No cases have been called to my attention giving such definition and I have found none. The legislative history of the Act, however, shows that a franchise dealer of the manufacturer is an "agent" of the manufacturer. The House Report quotes Buggs v. Ford Motor Co., 113 F.2d 618 (7 Cir. 1940), describing an automobile dealer as an agent of the manufacturer. 3 U.S.Code Cong. & Ad. News, pp. 4596, 4599 (84th Cong. 2nd Sess.1956).

■ To treat the automobile dealer as an agent for venue purposes is consistent with the purposes of the Act. The Act was passed to protect a dealer, economically feeble compared to the manufacturer, by granting him broad judicial protection from a manufacturer's arbitrary treatment. See 3 U.S.Code Cong. & Ad. News, supra, at 4596–4598. Part of this protection necessarily includes a convenient forum in which to seek relief.

Such treatment would also be consonant with the activities of Hoffman Corp. on behalf of the manufacturer. It was through its distributor, strictly regulated by the manufacturer, that S.p.A. had its cars sold and serviced. See Jeffrey-Nichols Motor Co. v. Hupp Motor Car Corp., supra; Fiat Motor Co. v. Alabama Imported Cars, Inc., supra; Rabinowitz v. Kaiser-Frazer Corp., supra, 96 N.Y.S. 2d at 644.

■ Moreover, there now appear to be several other dealers who handle Alfa Romeo cars in this district. A number of employees of S.p.A. have been consistently carrying on business in its behalf within this district. Alfa Inc., its New York subsidiary is plainly a corporate "agent" of S.p.A. here. See Boryk v. DeHavilland Aircraft Co., 341 F.2d 666 (2 Cir. 1965); Intermountain Ford Tractor Sales Co. v. Massey-Ferguson Ltd., 210 F.Supp. 930, 938 (D.Utah, 1962), aff'd per curiam, 325 F.2d 713 (10 Cir. 1963), cert. den., 377 U.S. 931, 84 S.Ct. 1334, 12 L.Ed.2d 296 (1964); Donlan v. Carvel, 193 F.Supp. 246 (D.Md. 1961); In re Electric & Musical Industries, Ltd., Middlesex, England, 155 F. Supp. 892 (S.D.N.Y.1957); United States v. Watchmakers of Switzerland Information Center, Inc., 134 F.Supp. 710 (S.D.N.Y.1955).

Venue is properly laid under the Automobile Dealers Act.

## II. Service on S.p.A.

(a) Automobile Dealers Act claim.

■ The Automobile Dealers Act (15 U.S.C. §§ 1221–1225) contains no special provision for service of process. Although the Act is an addition to the anti-trust laws, it has been construed as not incorporating all the provisions of the Clayton Act. See Bateman v. Ford Motor Co., 302 F.2d 63 (3 Cir. 1962). Thus, § 12 of the Clayton Act, 15 U.S.C. § 22 providing for service of process in anti-trust actions is inapplicable to the Automobile Dealers Act. Schnabel v. Volkswagen of America, Inc., 185 F. Supp. 122, 128–129 (N.D.Iowa 1960). Consequently, service of process under

2. "An automobile dealer may bring suit against any automobile manufacturer * * * in any district court of the United States in the district in which said manufacturer resides, or is found, or has an agent * * *."

the Automobile Dealers Act is governed by the Federal Rules of Civil Procedure and the validity of any service is to be tested by those rules.

S.p.A. was served by registered mail at its Italian headquarters and by personal service on its general manager in Italy by an Italian attorney designated for that purpose by the clerk of this court pursuant to Rule 4(c), F.R.C.P., and Rule 12(a) of the General Rules of this court.

Rules 4(e) and 4(f), F.R.C.P., allow a party not an inhabitant of the state or found therein to be served with process in a federal court in the manner and under the circumstances prescribed by a state statute.[3]

Under § 302(a) of the New York C.P.L.R. personal jurisdiction may be obtained over a "non-domiciliary" who "transacts any business within the state" in person or through an agent.[4] In such event out of state personal service may be made "in the same manner as service is made within the state, by any person authorized to make service by the laws of the * * * country in which service is made or by any duly qualified attorney, * * * or equivalent in such jurisdiction."[5] (§ 313 C.P.L.R.) Under § 311 C.P.L.R.[6] personal service may be made upon a corporation by delivering the summons to its managing or general agent.

S.p.A. does not dispute that it was properly served under the New York statute, if that statute applies. It takes the position, however, (1) that Rule 4(f), F.R.C.P., limits service to New York State and therefore extraterritorial service is invalid, and (2) assuming the applicability of state law, that it did not transact business within the state as required by § 302(a), C.P.L.R., and therefore could not be served in Italy under it. Both contentions are without merit.

Rules 4(e) and 4(f), F.R.C.P., permit extraterritorial service under state law even on federal claims. United States v. First National City Bank, 379 U.S. 378, 381, 85 S.Ct. 528, 13 L.Ed.2d 365 (1965); United States v. Montreal Trust Co., 35 F.R.D. 216 (S.D.N.Y.1964). Compare Schnabel v. Volkswagen of America, Inc., 185 F.Supp. 122 (N.D. Iowa (1960).

3. 4(e). "Whenever a statute of the United States * * * provides for service of a summons, * * * upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute * * *, or, if there is no provision therein prescribing the manner of service, in a maner stated in this rule. Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons * * * upon a party not an inhabitant of or found within the state, * * * service may * * * be made under the circumstances and in the manner prescribed in the statute or rule."

4(f). "All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state. * * *."

4. "§ 302(a) Acts which are the basis of jurisdiction. A court may exercise personal jurisdiction over any non-domiciliary, * * * as to a cause of action arising from any of the acts enumerated in this section, in the same manner as if he were a domiciliary of the state, if, in person or through an agent, he:
1. Transacts any business within the state;"

5. "§ 313. Service without the state giving personal jurisdiction.
"A person * * * subject to the jurisdiction of the courts of the state under section * * * 302 * * * may be served with the summons without the state, in the same manner as service is made within the state, * * * by any person authorized to make service by the laws of the * * * country in which service is made or by any duly qualified attorney, * * * or equivalent in such jurisdiction."

6. "§ 311. Personal service upon a corporation * * * shall be made by delivering the summons as follows:
"1. upon any domestic or foreign corporation, to * * * managing or general agent * * *."

▉ The facts demonstrate that the Automobile Dealers Act claim arises out of a dispute over a contract negotiated, signed and performed in New York. It is plain under the New York cases that the suit is thus one arising from the transaction of business in New York within the meaning of the provisions of the C.P.L.R. extraterritorial service of process. See, e. g., Iroquois Gas Corp. v. Collins, 42 Misc.2d 632, 248 N.Y.S.2d 494, 497 (Sup.Ct.1964); Patrick Ellam, Inc. v. Nieves, 41 Misc.2d 186, 245 N.Y.S. 2d 545 (Sup.Ct.1963); Steele v. De Leeuw, 40 Misc.2d 807, 244 N.Y.S.2d 97 (Sup.Ct.1963); cf. National Gas Appliance Corp. v. A. B. Electrolux, 270 F.2d 472 (7 Cir. 1959), cert. den., 361 U.S. 959, 80 S.Ct. 584, 4 L.Ed.2d 542 (1960); see also Fiat Motor Co. v. Alabama Imported Cars, Inc., supra, 292 F.2d at 747.

Service of process on this claim was plainly valid.

### (b) Robinson-Patman claims.

Unlike the Automobile Dealers Act, the Robinson-Patman Act has a special provision concerning service of process. (15 U.S.C. § 22).[7] Process may be served "in the district of which [defendant corporation] is an inhabitant, or wherever it may be found."

S.p.A. was clearly "found" in Italy and Hoffman Corp. contends that it could therefore be served there. Defendant urges, however, that § 22 must be read as requiring service in any judicial district in which a defendant may be "found" and that thus service outside the United States is barred.

▉ Section 22 was enacted to enlarge the choice of district available for those injured by corporate violations of the antitrust laws and to provide a convenient forum in which to sue. See, e. g., United States v. Scophony Corp., 333 U.S. 795, 808, 68 S.Ct. 855, 92 L.Ed. 1091 (1948); Abrams v. Bendix Home Appliances, 96 F.Supp. 3, 5 (S.D.N.Y. 1951). It is to be liberally construed to that end. See Abrams v. Bendix Home Appliance Corp., supra, 96 F.Supp. at p. 5.

▉ In order for service of process to be constitutionally valid there must be minimal contacts with the jurisdiction out of which process is issued. See International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927). It must also be served in a manner reasonably calculated to give a party actual notice of proceedings against him. See Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L. Ed. 865 (1950).

▉ It is plain that in this case there are at least minimal contacts within this district meeting these standards, as I have already found under the venue provisions of § 22. Thus, there is no constitutional impediment to service outside the United States here provided that adequate notice is given. There is no question that S.p.A. was not only "found" in Italy as § 22 provides but had full notice concerning this suit by service on its general manager as Rules 4(e) and (i), F.R.C.P., authorize.[8] I see no reason to limit the provisions of § 22 so

---

7. "22. Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

8. Rule 4(e). "Whenever a statute of the United States * * * provides for service of a summons * * * upon a party not * * * found within the state * * * service may be made under the circumstances and in the manner prescribed by the statute * * *."

Rule 4(i). "When the federal * * * law referred to in subdivision (e) of the rule authorizes service upon a party not * * * found within the state in which the district court is held, and service is to be effected upon the party in a foreign country, it is also sufficient if service of the summons and complaint is

as to apply only to service within the United States.

But quite apart from this, service is also valid under the Federal Rules authorizing service in accordance with local state statutes. As has been pointed out, service on S.p.A. under the Automobile Dealers Act was proper under Rule 4, F.R.C.P., and the relevant provisions of the New York C.P.L.R. Whereas the Automobile Dealers Act contained no provision for service of process, the Robinson-Patman Act does.

■ However, the provisions of the Robinson-Patman Act relating to service are not exclusive and are supplemented by the service provisions of the rules. I see no reason to hold that service under the Robinson-Patman Act may not be made under a state "long arm" statute.

■ Even assuming there was a conflict between § 22 and the Rules, the Rules would prevail. Rule 1, F.R.C.P., provides that the Rules of Civil Procedure apply to all civil suits. There is no exception for anti-trust cases. The enabling legislation provided that "[a]ll laws in conflict with such rules shall be of no further force and effect after such rules have taken effect." (28 U.S.C. § 2072).

The Supreme Court in promulgating amendments to the Rules assumed apparently that state long arm statutes were applicable in federal question cases. See Amendments to Rules of Civil Procedures, Statement of Black and Douglas, J.J., 374 U.S. 861, 869 (1963). See also, Advisory Committee's Notes to Rules 4(d) (7); 4(e) and 4(f).

It may be noted that whereas the Robinson-Patman Act in § 22 has provisions relating to service on corporations, there is no comparable provision with respect to service on individuals. In the case of individuals, therefore, the rules plainly

apply and service could be made under applicable state law. See United States v. First National City Bank, 379 U.S. 378, 85 S.Ct. 528 (1965); United States v. Montreal Trust Co., 35 F.R.D. 216 (S.D.N.Y.1964), dealing with suits under tax statutes containing no provisions with respect to service of process. There seems no good reason to permit suits against individual defendants under the Robinson-Patman Act to be commenced by service under state law and to bar service on corporations under the same statutes.

■ I hold that service upon a corporation under the Robinson-Patman Act may be made under state long arm statutes as authorized by the federal rules. See Metropolitan Sanitary District of Greater Chicago v. General Electric Co., 35 F.R.D. 131 (N.D.Ill.1964). Accord, 1 Barron & Holtzoff, Federal Practice and Procedure (Supp.1964), § 182.1 and fn. 56.16a; 2 Moore, Federal Practice, p. 1291.56 and fn. 24 at p. 49, Supp.1964.

Section 302, C.P.L.R., authorizes service outside the state on a party that "transacts any business within the state" where the suit is one "arising from" such business.

■ S.p.A. was clearly transacting business within the meaning of the venue provisions of § 22. While the requirements for transacting business under C.P.L.R., § 302 and § 22 are not necessarily the same, the activities of S.p.A. in New York plainly constitute transacting business within the requirements of § 302 also. See, e. g., Boryk v. DeHavilland Aircraft Co., 341 F.2d 666, supra; Taca Int'l Airlines S.A. v. Rolls-Royce of England, Ltd., 15 N.Y.2d 97, 204 N.E.2d 329, 256 N.Y.S.2d 129 (1965); Singer v. Walker, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965); Iroquois Gas Corp. v. Collins, 42 Misc.2d 632, 248 N.Y.S.2d 494 (su-

---

made: * * * (C) * * * upon a corporation * * * by delivery to an officer, a managing or general agent; or (D) by any form of mail, requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the

party to be served; * * *. Service under (C) * * * above may be made by any person who is not a party and is not less than 18 years of age or who is designated by order of the district court * * *."

pra); Patrick Ellam, Inc. v. Nieves, 41 Misc.2d 186, 245 N.Y.S.2d 545 (supra).

Service on S.p.A. as to the Robinson-Patman claims is valid.

### III. Motions to dismiss for failure to state a claim under the Automobile Dealers Act.

Under the Automobile Dealers Act suit may be brought only for failure to perform in good faith the terms of a written franchise agreement.[9]

Defendants urge that though there was a written franchise agreement between S.p.A. and M. E. Hoffman, plaintiff Hoffman Corp. was not a party to that contract and thus there is no contract upon which it may bring suit under the statute.

The plaintiff alleges that Hoffman entered into the franchise agreement in suit with S.p.A. "on behalf of plaintiff" (Hoffman Corp.).

Moreover, it appears that S.p.A. treated the franchise agreement as if Hoffman Corp. was in fact the other contracting party and was operating under it. This is quite sufficient to pose a triable issue as to whether Hoffman Corp. may sue on the contract, quite apart from the obvious estoppel question which is also present. See Harvey Radio Laboratories v. United States, 115 F.Supp. 444, 449, 126 Ct.Cl. 383 (1953), cert. den., 346 U.S. 937, 74 S.Ct. 377, 98 L.Ed. 425 (1954).

The further claim that Hoffman Corp. is not an "automobile dealer" within the meaning of the Act flies in the face of the definition of that term in the statute.[10] Were there any doubt as to the intention of Congress to include enterprises distributing cars to retail dealers, it is dispelled by the House Report, 3 U.S.Code Cong. & Ad. News, p. 4604 (84th Cong. 2nd Sess. 1956), which states:

> "The manufacturer's obligation to act in good faith extends to all of his franchised dealers, including: dealers who sell automobiles to other dealers, franchised or not, for resale to the public * * *."

Whether these 12(b) (6) motions be treated as addressed to the face of the pleading or as motions for summary judgment as Rule 12(b) provides, the result is the same. They must be denied.

### IV. Motions to strike and for a more definite statement.

Motions under Rule 12(f) to strike portions of the complaint as immaterial, impertinent and scandalous are addressed to the discretion of the court, see Chasan v. Mutual Factors, 3 F.R.D. 477 (S.D.N.Y.1943), and are not favored. See 1A Barron & Holtzoff, Federal Practice and Procedure, p. 480 (1960).

Although the complaint is no model of conciseness and clarity, it cannot be said that the allegations attacked by S.p.A. and Alfa Inc. are unrelated to the controversy or prejudicial to them. See Erone Corp. v. Skouras Theatre Corp., 166 F.Supp. 621, 625 (S.D.N.Y.1957); American Machine & Metals Corp. v. De Bothezat Impeller Co., 8 F.R.D. 306, 308 (S.D.N.Y.1948); Tivoli Realty, Inc. v. Paramount Pictures, Inc., 80 F.Supp. 800 (D.Del.1948); 1A Barron & Holtzoff, supra.

Many of the allegations claimed to be immaterial provide a better understanding of the claim for relief by providing

---

9. "An automobile dealer may bring suit * * * and shall recover the damages * * * by reason of the failure of said automobile manufacturer * * * to act in good faith in performing * * * any of the terms * * * of the franchise * * *." (15 U.S.C. § 1222.)

"The term 'franchise' shall mean the written agreement or contract between any automobile manufacturer engaged in commerce and any automobile dealer which purports to fix the legal rights and liabilities of the parties to such agreement or contract." (15 U.S.C. § 1221 (b)).

10. "The term 'automobile dealer' shall mean any person, partnership, corporation * * * operating under the terms of a franchise and engaged in the sale or distribution of passenger cars * * *." (15 U.S.C. § 1221(c)).

background facts and thus are proper. See Contogeorge v. Spyrou, 7 F.R.D. 223, 229 (S.D.N.Y.1946); Tivoli Realty Co. v. Paramount Pictures, supra.

■ Defendants' motion for a more definite statement under Rule 12(e) has no substance. The pleading is not so vague or ambiguous as to prevent the defendants from being able to reasonably frame an answer. See National Cold Storage Co. v. Port of New York Authority, 24 F.R.D. 404 (S.D.N.Y.1959); Somberg v. Bluemschine, 8 F.R.D. 197 (S.D.N.Y.1948); 1A Barron & Holtzoff, supra, at pp. 425–28.

There is no basis for relief under Rules 12(e) and 12(f).

### V. The Reitz motion to dismiss for failure to state a claim.

■ Plaintiff's complaint is cast in terms of a conspiracy between the three defendants. Reitz is an officer of Alfa Inc. and an employee of S.p.A. He contends that legally there can be no conspiracy between a corporation and its officers or other employees where the agent of the corporation is acting on behalf of the corporation. Assuming that argument valid, the complaint nevertheless states a claim upon which relief can be granted. The allegations of conspiracy in the complaint in effect charge that Reitz was a joint tort feasor, consciously participating in the misdeeds of his corporate employer. See Original Ballet Russe Ltd. v. Ballet Theatre, Inc., 133 F.2d 187, 189 (2 Cir. 1943); Green v. Davis, 182 N.Y. 499, 504, 75 N.E. 536 (1905).

Reitz also maintains that an employee of a corporation acting on behalf of his corporate employer is not subject to suit as an individual under either the Robinson-Patman Act or the Automobile Dealers Act.

### (a) Robinson-Patman Act.

■ Section 13 of the Robinson-Patman Act makes discriminations by "any person" engaged in commerce unlawful. It is clear from the Act's definition of "person" [11] that it applies to individuals as well as corporations.

■ Thus an officer or employee of a corporation may be sued as an individual for acts done in behalf of his corporate employer in violation of the statute. Cott Beverage Corp. v. Canada Dry Ginger Ale, Inc., 146 F.Supp. 300 (S.D.N.Y.1956), appeal dismissed 243 F.2d 795 (2 Cir. 1957); Kentucky-Tennessee Light & Power Co. v. Nashville Coal Co., 37 F.Supp. 728, 738 (W.D.Ky. 1941); see Maternity Trousseau, Inc. v. Maternity Mart of Baltimore, 196 F.Supp. 456 (D.Md.1961); Clabaugh v. Southern Wholesale Grocers' Ass'n, 181 F. 706 (C.C.Ala.1910); cf. Federal Trade Commission v. Standard Educ. Soc'y, 86 F.2d 692, 695 (2 Cir. 1936), modified on other grounds, 302 U.S. 112, 58 S.Ct. 113, 82 L.Ed. 141 (1937).

### (b) Automobile Dealers Act.

The Reitz motion to dismiss the Automobile Dealers Act claim against him, and the two claims alleged in the complaint to be pendent thereto, on the ground that he is not subject to the provisions of the Act, has somewhat more merit.

However, the proof with respect to the claim against him under the Robinson-Patman Act which I have sustained, cannot be substantially different from the proof on the Automobile Dealers Act claim. Since Reitz is already in the action it would serve no good purpose to determine his motion directed to the Automobile Dealers Act claim at this stage of the proceedings. For all that appears there may be questions of fact which arise at the trial with respect to his liability on that claim. It seems to me the better part of wisdom to leave the determination of this question to the trial court.

The application of Reitz to dismiss the claim under the Automobile Dealers Act

---

11. "The word 'person' or 'persons' whenever used in this Act shall be deemed to include corporations and associations existing under or authorized by the laws * * * of any state * * *." (15 U.S.C. § 12).

is therefore denied at this time without prejudice to a renewal.

## VI. Service on Reitz

Reitz contends that he was not validly served and the court lacks personal jurisdiction over him.

He was personally served in New Jersey under the long arm provisions of the New York C.P.L.R., §§ 313, 302, 308, 311. There is no need to repeat the previous discussion of the application of the New York long arm statute under both the Robinson-Patman and Automobile Dealers Act. C.P.L.R. § 302 provides:

"A court may exercise personal jurisdiction over any non-domiciliary * * * as to a cause of action arising from any of the acts enumerated in this section * *.

"1. transacts any business within the state; or

"2. commits a tortious act within the state * * *."

Numerous activities by Reitz are alleged which tend to show the transaction of business or the commission of a tort, but it is not clear which of these activities, if any, took place in New York. Plaintiff concedes that there are not sufficient facts now before me with respect to New York activities to establish jurisdiction. It asks that this issue not be decided until it has had an opportunity through discovery proceedings to obtain more specific information as to Reitz's New York activities. The request is reasonable and the Reitz motion to dismiss for want of personal jurisdiction is denied without prejudice to renewal at an appropriate time.

## VII. Venue as to Reitz

Reitz also claims improper venue on both Robinson-Patman and Automobile Dealers Act claims.

(a) Robinson-Patman Act claim.

15 U.S.C. § 15 provides that any person injured "by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent."

Plaintiff does not contend that any of these requirements are met as to Reitz. Instead, it argues that venue is proper under a subsequent general venue statute, 28 U.S.C. § 1391(d), which permits an alien to be sued in any district. The sole question is thus whether the specific anti-trust venue provision exclusively governs venue or whether it is supplemented by the general venue provisions of 28 U.S.C. § 1391.

This court has consistently held that the specific venue provisions of various statutes, including the statute here, are supplemented by the general venue provisions of § 1391. See Auburn Capitol Theatre Corp. v. Schine Chain Theatres, Inc., 83 F.Supp. 872, 874 (S.D.N.Y.1949) (anti-trust); Anderson-Friberg, Inc. v. Justin R. Clary & Son, 98 F.Supp. 75, 83 (S.D.N.Y.1951) (anti-trust); Southern Paperboard Corp. v. United States, 127 F.Supp. 649 (S.D.N.Y.1955) (internal revenue); Phillips v. Pope & Talbot, Inc., 102 F.Supp. 51 (S.D.N.Y.1952) (Jones Act); see also Hutchison v. Pacific-Atlantic S.S. Co., 217 F.2d 384, 386–387 (9 Cir. 1954) (Jones Act); Lipp v. National Screen Service Corp., 95 F. Supp. 66 (E.D.Pa.1950) (anti-trust). See generally, Note, 56 Colum.L.Rev. 394, 412–13 (1956). But see United Transit Co. v. United States, 158 F.Supp. 856 (M.D.Tenn.1957); 1 Barron & Holtzoff, Federal Practice and Procedure, § 71 at p. 359 (1960).

In 1957 the Supreme Court, relying on its decision in Stonite Products Co. v. Melvin Lloyd Co., 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026 (1942), held that the general venue provisions of 28 U.S.C. § 1391(c) did not apply in suits for patent infringement which were governed exclusively by the prior specific provision in 28 U.S.C. § 1400 as to venue in such suits. Fourco Glass Co. v. Transmirra Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed. 2d 786 (1957).

Reitz urges that under Fourco the venue provisions of the anti-trust acts should be similarly construed. This is

84

an unwarranted extension of Fourco which dealt with a completely distinguishable statutory and legislative situation. See Pure Oil Co. v. Suarez, 346 F. 2d 890 (5 Cir.) (1965). But see Leith v. Oil Transport Co., 321 F.2d 591 (3 Cir. 1963).

In Fourco the Supreme Court on the basis of the legislative history of the patent infringement venue provision concluded that Congress intended those provisions exclusively to govern any patent infringement actions. Indeed, 28 U.S.C. § 1400 was enacted as a restrictive measure to limit broader prior venue which had been subject to abuse. Stonite Products Co. v. Melvin Lloyd Co., supra, 315 U.S. at pp. 566–567, 62 S.Ct. 780.

■ The purpose of Congress in enacting the anti-trust venue provisions was quite the opposite. Instead of restricting the anti-trust provisions Congress sought to expand venue so as to insure that aggrieved parties would have a convenient forum in which to sue. See e. g., Abrams v. Bendix Home Appliances, 96 F.Supp. 3, 5 (S.D.N.Y.1951); Anderson-Friberg, Inc. v. Justin Clary & Son, 98 F.Supp. 75, 83 (S.D.N.Y. 1951); Cinema Amusements v. Loew's, Inc., 85 F.Supp. 319, 327 (D.Del.1949). Thus, the anti-trust venue provisions should not be construed strictly or narrowly so as to exclude the operation of more liberal provisions subsequently enacted. The general venue provisions of 28 U.S.C. § 1391, including that with respect to aliens should be considered as supplementing the prior provisions in the anti-trust act in accordance with congressional intent. See Auburn Capitol Theatre Corp. v. Schine Chain Theatres, Inc., supra, 83 F.Supp. at p. 874; 1 Moore, Federal Practice, p. 1510; cf. Pure Oil Co. v. Suarez, 346 F.2d 890 (5 Cir.) (1965).

■ Moreover, in contrast to Fourco, while the anti-trust venue provision does not deal with aliens at all, the later and supplementing provisions of § 1391 make special provision for venue as to aliens which had not been previously provided by statute. Thus, it may reasonably be assumed that § 1391, at least with respect to aliens, is supplementary to the earlier venue provisions of the anti-trust laws.

I hold that there is venue as to Reitz on the Robinson-Patman claims.

(b) Automobile Dealers Act Claim.

Questions of the sufficiency of the claim under the Automobile Dealers Act as against Reitz and of sufficiency of service on Reitz thereunder have been reserved for later determination. Since the venue questions on this claim involve somewhat the same problems, the venue questions should also be reserved at this time. The Reitz motion to dismiss the Automobile Dealers Act claim for improper venue will be denied without prejudice to renewal at an appropriate time.

All of the motions by the various defendants are denied to the extent indicated in this opinion.

Settle order on notice.